783 So.2d 1138 (2001)
WEATHERBY ASSOCIATES, INC., d/b/a Weatherby Health Care, a Connecticut corporation, and Jackson Lewis Schnitzler & Krupman, Appellants,
v.
Mary Kay BALLACK, Capital Health Resources, Inc., a Florida corporation, and Capital Finance Resources, Inc., a Florida corporation, Appellees.
No. 4D00-3358.
District Court of Appeal of Florida, Fourth District.
March 28, 2001.
Rehearing Denied May 16, 2001.
*1139 Christine L. Wilson and Patrick G. De-Blasio, III of Jackson Lewis Schnitzler & Krupman and Herman J. Russomanno of Russomanno & Borrello, P.A., Miami, for appellants.
Kimberly Hall Doyle and Mark B. Milrot of Atkinson, Diner, Stone, Mankuta & Ploucha, P.A., Hollywood, for appellees.
HAZOURI, J.
Weatherby Associates, Inc., d/b/a Weatherby Health Care (Weatherby) and its attorneys, Jackson Lewis Schnitzler & Krupman (Jackson Lewis) appeal from final orders awarding attorney's fees under section 57.105(1), Florida Statutes (1999), to Capital Health Resources, Inc. (Capital Health), Capital Finance Resources, Inc. (Capital Finance) and Mary Kay Ballack (Ballack).
This case stems from a suit filed by Weatherby against Ballack, Capital Health and Capital Finance for breach of an employment agreement and tortious interference with business relationships. Weatherby, a Connecticut corporation authorized to do business in Ft. Lauderdale, is in the business of recruiting physicians and health care executives on behalf of clients seeking to hire them. Ballack was formerly employed by Weatherby as a physician recruiter. Capital Health also recruits physicians and health care executives and is a direct competitor of Weatherby. Capital Finance recruits and places accountants. Capital Health and Capital Finance are owned and operated by Mark Murrin and Gary Penichet, who are also former employees of Weatherby.
On June 21, 1993, as a condition of her employment with Weatherby, Ballack signed an employment agreement. During her employment, Ballack had access to search databases that included information on candidates seeking new positions and clients seeking to hire these candidates. The employment agreement includes a covenant of non-disclosure of such confidential information and a covenant of non-competition. The covenant of non-competition provides that the employee will not become engaged in physician recruitment or health care executive search or placement in any capacity with any company or business dealing with physician recruitment or health care executive search for a period of one year after termination of the agreement. The agreement further provides that it is to be "construed and interpreted in accordance with Connecticut law."
On Monday, October 25, 1999, Ballack resigned. After she resigned, a CD ROM disk was discovered missing and she was seen entering Capital Health's office one morning. Weatherby's attorney contacted *1140 Capital Health's attorney, who said that Ballack was working for Capital Finance not Capital Health. Weatherby's attorney did research on Capital Finance and did not find its articles of incorporation. On that date, the articles of incorporation had not been filed.
On November 5, 1999, Weatherby filed suit against Ballack and Capital Health. The six count complaint alleged that Ballack breached the employment agreement by working for Capital Health and giving Capital Health confidential information, in violation of the non-competition and non-disclosure provisions. The complaint also sought damages against Ballack and Capital Health for tortious interference with business relations and unjust enrichment. On that date, Weatherby also filed an emergency motion for a temporary injunction. The motion sought to enforce the non-disclosure and non-competition provisions in the employment agreement.
The depositions of Ballack and Murrin were conducted on November 29, 1999. Ballack testified that after resigning from Weatherby, she contacted Murrin at Capital Finance about a position and began to work for Capital Finance in November of 1999, recruiting accountants. Murrin confirmed that Ballack was working for Capital Finance.
Lawrence Stewart, Weatherby's corporate representative, was deposed on November 30, 1999. He testified that he had no evidence that Ballack had used confidential information, that she removed confidential information, that she is currently engaged in health care executive search or physician recruitment or that she is not in fact working for Capital Finance as an accountant recruiter.
He explained that Weatherby decided to file the suit based on information that Ballack was seen entering Capital Health's office and that she conducted various database searches the weekend before she left Weatherby. However, Weatherby did not find out that Ballack had conducted the searches until after it had filed suit. He indicated he did not know if Ballack removed the missing CD ROM disk and Weatherby was not accusing her of taking it. Stewart also explained that Weatherby filed suit against Capital Health because Weatherby believes that Capital Health employed Ballack.
A hearing on Weatherby's motion for a temporary injunction was held on December 16, 1999. Weatherby's counsel argued that Capital Finance was incorporated as a sham corporation and that although Ballack claims she is employed by Capital Finance, she is actually employed by Capital Health. The trial court asked Weatherby's counsel if he had any witnesses or evidence to support his argument. Weatherby's counsel replied that he did not. The trial court denied the motion.
On December 22, 1999, Weatherby filed an amended complaint, adding Capital Finance as a defendant. On January 7, 2000, Capital Health and Capital Finance filed a motion for summary judgment and for an award of attorney's fees pursuant to section 57.105, Florida Statutes (1999), the frivolous litigation statute. They argued that Weatherby filed a frivolous lawsuit and that its claims were not capable of being supported by material facts. Ballack joined the motion. On January 21, 2000, Weatherby filed a voluntary dismissal.
The trial court held a hearing on the motion for attorney's fees on March 9, 2000. As to Ballack, the court found as follows:
1. At the time that this action was instituted by the Plaintiff against Defendant, Mary Kay Ballack, Plaintiff had no evidence to support the Plaintiff's claims. After substantial discovery the Plaintiff still had no evidence to support *1141 the Plaintiff's claims. The Plaintiff pursued this matter through a hearing on a Motion for Temporary Injunction and the hearing on this motion admitted to this court that the Plaintiff had no evidence to support its claims. The Plaintiff served a Voluntary Dismissal on January 21, 2000. The Court finds that pursuant to Florida Statutes § 57.105(1) the Plaintiff and the Plaintiff's counsel knew or should have known that the claims were not supported by material facts necessary to establish the claims. The court find [sic] that at the time this action was filed, there was a complete absence of a justiciable issue regarding whether Defendant Mary Kay Ballack violated the Employment Agreement, or committed any of the acts alleged in the Complaint. The court finds that Plaintiff's counsel did not act in good faith in filing this action. The court finds that due to the fact that there was not one shred of evidence in the form of testimony or otherwise which supports the Plaintiff's claim, the Defendant, Mary Kay Ballack is entitled to an award of reasonable attorney's fees under Florida Statutes § 57.105(1).
The trial court held that Ballack's attorney's fees were to be paid by Weatherby and Weatherby's attorneys, in equal parts. The court further held that Ballack was entitled to recover costs pursuant to Florida Rule of Civil Procedure 1.420(d) and section 57.041, Florida Statutes.
As to Capital Health and Capital Finance, the trial court's findings were similar. However, the trial court did not assess attorney's fees against Weatherby's attorneys.
Weatherby filed a motion to vacate the orders. At the hearing on the motion, the trial court indicated that it believed the suit was filed in bad faith, as there was no evidence to support the allegations and denied the motion.
On August 23, 2000, the trial court entered a final judgment against Weatherby and in favor of Capital Health and Capital Finance in the amount of $20,000, which includes $18,500 for attorney's fees and $1,500 in taxable costs. The trial court also entered a final judgment against both Weatherby and its attorneys, Jackson Lewis Schnitzler & Krupman and in favor of Ballack for attorneys fees incurred in the amount of $18,500. Additionally, judgment was entered against Weatherby for costs in the amount of $1,500.
Weatherby raises four arguments on appeal. First, Weatherby argues that when it filed its lawsuit there was a threat that Weatherby's proprietary information and trade secrets had been taken and might be disclosed by Ballack. Additionally, Weatherby contends that it had sufficient evidence to raise an inference that Ballack was competing with Weatherby. Therefore, Weatherby argues that the trial court erred when it awarded appellees attorney's fees under section 57.105(1).
Attorney's fees are awarded under section 57.105(1), Florida Statutes, where there is a total or absolute lack of justiciable issues of either law or fact, this being tantamount to a finding that the action is frivolous or completely untenable. Muckenfuss v. Deltona Corp., 508 So.2d 340, 341 (Fla.1987); Berman & Feldman v. Winn Dixie, Inc., 684 So.2d 320, 322-23 (Fla. 4th DCA 1996); Sykes v. St. Andrews Sch., 625 So.2d 1317 (Fla. 4th DCA 1993). The trial court's finding must be based upon substantial competent evidence presented to the court at the hearing on attorney's fees or otherwise before the court and in the trial court record. Strothman v. Henderson Mental Health Ctr., Inc., 425 So.2d 1185 (Fla. 4th DCA 1983). See also O'Brien v. Brickell Townhouse, Inc., 457 So.2d 1123 (Fla. 3d DCA 1984).
*1142 Following the 1999 amendment to section 57.105(1), the frivolousness of a claim may be measured when the claim is "initially presented to the court or at any time before trial." See § 57.105(1), Fla. Stat. (1999). Although a claim may not have been frivolous when initially filed, failure to discharge a party when it becomes evident that there no longer is a justiciable claim or defense may subject a losing party to the penalties of section 57.105. See id. See also Nat'l Cont'l Ins., Co. v. Barker, 773 So.2d 648 (Fla. 4th DCA 2000) (discussing the 1999 amendment to section 57.105). Compare Klein v. Layne, Inc. of Fla., 453 So.2d 203, 205 (Fla. 4th DCA 1984) (holding that under section 57.1058, Florida Statutes (1981), a plaintiff whose claim is non frivolous at its inception should not be assessed with attorney's fees).
Therefore, there are two prongs to the analysis, under section 57.105(1), Florida Statutes (1999). First, the court must determine whether the suit was frivolous when initially filed. If it was not, then the court must determine whether the suit became frivolous after the suit was filed.
When Weatherby initially filed suit, it had the following evidence: (1) A week after Ballack resigned, she was seen entering Capital Health's office building parking garage with an access card and was then seen entering Capital Health's office, and (2) Capital Health's attorney informed Weatherby's attorney that Ballack was working for Capital Finance as an accountant recruiter. However, when Weatherby's attorney searched for information on Capital Finance, he found out that no such corporation existed. On that date, Capital Finance had yet to be incorporated. Weatherby could have reasonably inferred from this evidence that Ballack and Capital Health were making misrepresentations concerning where Ballack was employed and inferred that Ballack was working for Capital Health rather than Capital Finance.
The evidence prior to filing suit did create a justiciable issue of fact concerning whether Ballack was working for Capital Health. Thus, the suit was not frivolous when it was initially filed.
After suit was filed, Weatherby discovered that Capital Finance was incorporated and both Ballack's and Murrin's deposition testimony indicated that Ballack was working for Capital Finance as an accountant recruiter. Accountant recruiting is not a violation of the non-competition provision. More importantly, Stewart admitted in his deposition on November 30, 1999, that Weatherby had no evidence that Ballack took or used confidential information after she resigned, that she was involved in physician recruitment or health care executive searches or that Ballack was not in fact working for Capital Finance as an accountant recruiter.
There is no indication that subsequent to Stewart's deposition on November 30th, Weatherby expected to discover any further evidence. On December 13th, at the hearing on the motion for a temporary injunction, Weatherby's counsel attempted to argue that Capital Finance was a sham corporation. However, counsel did not submit any evidence to support the argument. Nevertheless, on January 7, 2000, Weatherby amended the initial complaint, adding Capital Finance as a party. Subsequently, on January 21, 2000, Weatherby voluntarily dismissed the suit.
As Stewart admitted in his deposition, Weatherby had no evidence to substantiate its claims against Ballack and Capital Health. Any reasonable inference that Ballack was working for Capital Health disintegrated during discovery, leaving no justiciable issues of law or fact. Therefore, following Stewart's deposition, on November *1143 30, 1999, the justiciable issues were resolved, rendering the suit frivolous.
Thus, the trial court erred when it found that Weatherby's suit was frivolous when initially filed. However, there was substantial competent evidence that the suit became frivolous after it was filed. Therefore, the trial court should have awarded appellees attorney's fees only from the point that they had to defend a frivolous suit rather than from the point that suit was filed.
Second, Weatherby argues that the trial court erred when it assessed attorney's fees against Weatherby's attorneys, Jackson Lewis, on Ballack's motion for fees under section 57.105(1), absent a showing or finding of bad faith. We disagree.
When assessing attorney's fees against a losing party's attorney, the trial court must find that there were no justiciable issues of law or fact and that the losing party's attorney did not act in good faith based on the representations of his or her client. § 57.105(1), Fla. Stat. (1999). See also Russo & Baker v. Fernandez, 752 So.2d 716 (Fla. 1st DCA 2000).
The trial court did find that there were no justiciable issues of law or fact. The trial court also found on the face of its order, "Plaintiffs counsel knew or should have known that the claims [against Ballack] were not supported by material facts necessary to establish the claims.... The court finds that Plaintiffs counsel did not act in good faith in filing this action." Additionally, the court stated at the hearing on the motion for attorney's fees and at the hearing on the motion to vacate the trial court's order that Weatherby's counsel acted in bad faith when it decided to pursue a frivolous claim when he knew he had no evidence to support it.
There was substantial competent evidence to support the trial court's finding that Jackson Lewis acted in bad faith in pursuing a frivolous suit following Stewart's deposition, which clearly indicated that there were no justiciable issues of law or fact. Therefore, the trial court made the necessary findings when assessing attorney's fees against Jackson Lewis and these findings were without error.
Third, Weatherby argues that the trial court improperly awarded attorney's fees pursuant to section 57.105(1), Florida Statutes, because the parties agreed that Connecticut law would apply to any litigation arising out of the employment agreement. The choice of law provision in the agreement is irrelevant, because the trial court did not award attorney's fees pursuant to the agreement. Rather, the court awarded attorney's fees pursuant to section 57.105(1), Florida Statutes, because Weatherby filed and pursued a baseless lawsuit in a Florida court. Therefore, this argument is without merit.
Equally without merit is Weatherby's contention that it was denied the opportunity of an immediate evidentiary hearing. Weatherby was provided with an evidentiary hearing.
In conclusion, the case is remanded for the trial court to determine reasonable attorney's fees after November 30, 1999, the date of Stewart's deposition.
Affirmed in part, reversed in part.
WARNER, C.J., and GROSS, J., concur.