815 So.2d 708 (2002)
PRECISION TUNE AUTO CARE, INC., a Virginia corporation, Appellant,
v.
James E. RADCLIFFE, individually, and Performance Concepts, Inc., Appellees.
No. 4D00-3478.
District Court of Appeal of Florida, Fourth District.
April 24, 2002.
Rehearing Denied May 31, 2002.
Glen R. Goldsmith and Alan N. Jockers of Glen R. Goldsmith & Associates, P.A., *709 Miami, and Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for appellant.
Robert C. Weill, John R. Hargrove, and W. Kent Brown of Heinrich Gordon Hargrove Weihe & James, P.A. Fort Lauderdale, for appellees.
GROSS, J.
Precision Tune Auto Care, Inc. timely appeals from a final judgment for attorney's fees, pursuant to section 57.105(2), Florida Statutes (1998),[1] in favor of appellees James E. Radcliffe and Performance Concepts, Inc.
In 1994, Precision Tune entered into an agreement with Performance and Radcliffe allowing them to operate a "Precision Tune" franchise in West Palm Beach. Section 25.1 of the contract provided that:
[t]his agreement takes effect upon its acceptance and execution by Franchisor [Precision] in Virginia and shall be interpreted and construed under the laws thereof, which laws shall prevail in the event of any conflict of law; provided, however, that if any of the provisions of this Agreement would not be enforceable under the laws of Virginia, then such provisions shall be interpreted and construed under the laws of the state in which the premises of the Franchised Business is located.
In April 1998, Precision sought to terminate the franchise. In May 1998, Performance and Radcliffe filed suit against Precision based on contract and tort claims. Although it moved to dismiss based on the contract's forum selection clause, Precision later abandoned this defensive motion and filed an answer, affirmative defenses, and a counterclaim in August 1998. Due to discovery violations, the trial court struck Precision's pleadings in November, 1999, and rendered judgment for Performance and Radcliffe on liability.
On March 7, 2000, shortly before the case was scheduled for trial, Performance and Radcliffe filed a motion for attorney's fees. Although the motion did not specifically cite a statutory basis for attorney's fees, it generally referenced the "provisions on the Contract" [sic] and argued that "given the case law here in Florida, if a unilateral provision for the recoverability of attorney's fees is in a contract, Florida construes the recoverability of attorney's fees for both parties."
The case proceeded to trial on the issue of damages. On March 21, 2000, the jury awarded $841,093.86 in damages.[2]
At an April 25, 2000, post-trial hearing on the plaintiffs' motion for attorney's fees, Precision raised two defenses. First, it asserted the procedural defense that since the plaintiffs sought attorney's fees by motion "late in the game," instead of in a pleading, that the fees were not recoverable. Second, Precision argued that fees should not be awarded since the contract was a Virginia contract to which Florida law did not apply. Section 16.2 of the contract provided for attorney's fees only *710 to Precision in the event of the franchisee's default:
In the event of any default by Franchisee [plaintiffs] under this agreement, Franchisee shall pay Franchisor [Precision] all costs and expenses, including reasonable legal and accounting fees, incurred by Franchisor in connection with obtaining damages or injunctive or other relief for the enforcement of any provisions of this agreement.[3]
With this one-way attorney's fee provision, Performance and Radcliffe's entitlement to attorney's fees turned on the application of section 57.105(2) to the case. That section states:
If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract.
Virginia law contains no similar statute extending entitlement to attorney's fees to both parties to a contract when the contract allows for fees to just one party.
The trial court ultimately ruled that the plaintiffs were entitled to attorney's fees and entered a judgment for $63,569.
The trial court should not have awarded attorney's fees for two reasons. First, the choice of law provision in the contract barred the application of section 57.105(2); second, the plaintiffs did not properly plead their entitlement to attorney's fees so as to make it an issue in the case.
The parties' contract provided that it was to "be interpreted and construed under the laws" of Virginia, the home state of Precision. Virginia law does not rewrite a contract by transforming a unilateral attorney's fee provision into one applicable to the other party to the contract. "Generally, Florida enforces choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co., 761 So.2d 306, 311 (Fla.2000). To negate the parties' choice of law, "the countervailing public policy must be sufficiently important that it outweighs the policy protecting freedom of contract." Id. at 312.
In this case, we detect no Florida policy which would override the parties' ability to freely contract on the issue of attorney's fees. This was a commercial transaction. Statutes[4] rewriting contracts to make an attorney's fee provision reciprocal generally have a basis in consumer protection, since they serve to level the playing field *711 between parties of unequal bargaining power and sophistication. The majority of states do not have a statute imposing "reciprocal" attorney's fees on a contract. See James Chareq & Anne Fortney, An Argument for Retaining the Uniform Commercial Code, 51 CONSUMER FIN. L.Q. REP. 315, 320-21 (1997). A party entering into the contract in this case with a Virginia choice of law provision would reasonably expect that only Precision had a right to attorney's fees under the contract. To disregard the choice of law provision here would do violence to the concept of commercial comity. "Commercial stability in interstate trade depends on predictability and some degree of uniformity among the states in their willingness to honor commercial agreements." Cont'l Mortgage Investors v. Sailboat Key, Inc., 395 So.2d 507, 511 (Fla.1981).
Performance and Radcliffe rely upon Weatherby Associates, Inc. v. Ballack, 783 So.2d 1138 (Fla. 4th DCA 2001), but it is distinguishable. In Weatherby, the choice of law provision in the contract was "irrelevant, because the trial court did not award attorney's fees pursuant to the agreement," but relied on section 57.105(1), Florida Statutes (1999). Here, the contract is the basis for attorney's fees and the plaintiffs seek to apply a different Florida statute, section 57.105(2), to modify a contract provision. The choice of law provision is crucial to the outcome in this case.
A separate issue concerns the way that a party must introduce a claim for attorney's fees into a case. A claim for attorney's fees, based on either statute or contract, must be pled, and a "failure to do so constitutes a waiver of the claim." Stockman v. Downs, 573 So.2d 835, 837-38 (Fla.1991). The policy, behind the rule "is to provide notice to the opposing party that attorney's fees will be sought so that the opposing party might make an informed decision on whether to pursue a claim, dismiss it, or settle." Prudential Sec. Inc. v. Ruskin, 707 So.2d 782, 783 (Fla. 4th DCA 1998).
As the supreme court has written:
[T]he potential that one may be required to pay an opposing party's attorney's fees may often be determinative in a decision on whether to pursue a claim, dismiss it, or settle.
Stockman, 573 So.2d at 837. For these reasons, a party may not recover attorney's fees unless he has put the issue into play by filing a pleading seeking fees.
It was not necessary to plead entitlement to statutory attorney's fees under the 1998 version of section 57.105(1), which allowed the assessment of fees where there was a complete absence of justiciable issue of either law or fact. See Ganz v. HZJ, Inc., 605 So.2d 871 (Fla.1992). However, a party seeking attorney's fees pursuant to section 57.105(2), the crucial statute in this case, must specifically plead entitlement to such fees. See Res Panel Refrigeration Corp. v. Bill Collins Refrigeration Servs., Inc., 636 So.2d 569, 570 (Fla. 3d DCA 1994).
Because the plaintiffs' entitlement to fees required the application of section 57.105(2), they were required to specifically plead entitlement under the statute. The plaintiffs general request for costs in their complaint was insufficient to raise the issue under Stockman.
At one time, this court opined that Stockman allowed the issue of attorney's fees to be raised in a motion. See Green v. Sun Harbor Homeowners' Ass'n, Inc., 685 So.2d 23, 25 (Fla. 4th DCA 1996). However, this view was soundly and directly rejected by the supreme court:
The Fourth District's majority decided that when this Court stated in Stockman *712 that a claim for attorney fees must be "pled," the term was not used in its technical sense and did include motions. This is erroneous. This Court's use of the phrase "must be pled" is to be construed in accord with the Florida Rules of Civil Procedure. Complaints, answers, and counterclaims are pleadings pursuant to Florida Rule of Civil Procedure 1.100(a). A motion to dismiss is not a pleading. Stockman is to be read to hold that the failure to set forth a claim for attorney fees in a complaint, answer, or counterclaim, if filed, constitutes a waiver.
Green v. Sun Harbor Homeowners' Ass'n, Inc., 730 So.2d 1261, 1262-63 (Fla.1998).
We assume that the supreme court meant what it said and said what it meant in Green. The plaintiffs here were required to set forth their claim for attorney's fees in a pleading. The only way for them to have raised the issue two weeks before trial was to obtain "leave of court" through a motion to amend their complaint or "by the written consent of the adverse party." Fla. R. Civ. P. 1.190(a). At such a motion hearing, Precision could have demonstrated how it was prejudiced by the late amendment or argued that the entitlement to attorney's fees should have run from the date of the motion.
The plaintiffs argue that they fall within the exception to the Stockman pleading rule:
Where a party has notice that an opponent claims entitlement to attorney's fees, and by its conduct recognizes or acquiesces to that claim or otherwise fails to object to the failure to plead entitlement, that party waives any objection to the failure to plead a claim for attorney's fees.
573 So.2d at 838. It appears that this exception has been narrowed by Green's clarification that attorney's fees must be raised in a pleading and not a motion. We find no waiver in this case. It was the plaintiffs' obligation to obtain leave of court to amend their complaint. They cannot avoid this obligation and shift the burden to Precision by filing a motion for attorney's fees two weeks before trial and then arguing that Precision waived any objection by not obtaining a ruling from the court.[5]
The final judgment for attorney's fees is reversed.
STEVENSON and HAZOURI, JJ., concur.
NOTES
[1] Chapter 99-225, Section 4, Laws of Florida, rewrote this section and made former subsection (2) into new subsection (5). Though the subsections are identical, all references in this opinion are to section 57.105(2).
[2] Precision appealed the striking of its pleadings and the amount of damages awarded. This court decided in Precision Tune Auto Care v. Radcliffe, 804 So.2d 1287 (Fla. 4th DCA 2002), that the striking of the pleadings was proper, but reversed on the issue of damages, and remanded for a new trial on damages. At the end of the new trial, the trial court may have to decide whether to apply section 57.105(2) to award fees. We therefore choose to address the issues raised in this appeal.
[3] In addition, the plaintiff/franchisees were to indemnify Precision from all "losses and expenses" in connection with "any action, suit, proceeding, claim, demand, investigation, inquiry... or any settlement ..." arising out of "Franchisee's violation or breach of any warranty, representation, agreement or obligation in this Agreement." "Losses and expenses" were defined as:

without limitation, all losses, compensatory, exemplary or punitive damages, fines, charges, costs, lost profits, attorneys' fees, accountants' fees, expert witness fees, expenses, court costs, settlement amounts, judgments, compensation for damages to Franchisor's reputation and goodwill, costs of or resulting from delays, financing, costs of advertising material and media time/ space, and costs of changing, substituting or replacing the same, and any and all expenses of recall, refunds, compensation, public notices and other such amounts incurred in connection with the matters described.
[4] See, e.g., N.Y. Gen. Oblig. § 5-327; Conn. G.S.A. § 42-150bb; see also James Chareq & Anne Fortney, An Argument for Retaining the Uniform Commercial Code, 51 CONSUMER FIN. L.Q. REP. 315, 320-21 (1997).
[5] We distinguish this case from Rochlin v. Cunningham, 739 So.2d 1215 (Fla. 4th DCA 1999). There a motion was filed some months in advance of the trial date. Also, in Rochlin, it appears that we erroneously relied on language from Green v. Sun Harbor Homeowners' Ass'n, 685 So.2d 23, 25 (Fla. 4th DCA 1996), that was rejected by the supreme court in Green v. Sun Harbor Homeowners' Ass'n, Inc., 730 So.2d 1261 (Fla.1998).