824 So.2d 1016 (2002)
Ronald T. WALLS and Kim Skinner, Appellants,
v.
QUICK & REILLY, INC., et al., Appellees.
No. 5D01-3068.
District Court of Appeal of Florida, Fifth District.
August 30, 2002.
*1017 Neal J. Blaher, Orlando, for Appellants.
Keith Olin and Irene Oria of Morgan Lewis & Bockius LLP, Miami, for Appellees.
SAWAYA, J.
Appellants, Ronald Walls and Kim Skinner, appeal the trial court's amended final order which dismisses with prejudice their amended motion for attorneys' fees. We affirm.
Appellants opened both joint and separate brokerage accounts via a brokerage agreement with the Appellees, Quick & Reilly, Inc. and U.S. Clearing Corporation. Quick & Reilly, Inc. is a brokerage firm and US. Clearing Corporation is a firm engaged in clearing trades for Quick & Reilly's customers. The agreement provided that New York law would govern the agreement's terms and the arbitration of any controversy arising therefrom. Although the agreement does not contain a specific section regarding attorney's fees, it does include a clause that allows Appellees to recover their attorney's fees incurred for any collection action against the account holder. The clause provides:
[Appellees] reserve[] the right to terminate [Appellants'] account at any time for any reason. Upon termination, [Appellants] will remain liable for any debt balances or deficiencies in [Appellants'] account.
[Appellants] will reimburse [Appellees] for the cost of collection of any debt balance or deficiency in connection with any of [Appellants'] accounts, including reasonable attorney's fees and court costs.
After opening the accounts, Appellants requested that Appellees buy $72,000 worth of Discovery Zone, Inc. stock, a company emerging from the grips of bankruptcy.[1] Prior to Appellants' order being executed, Appellees informed them that the price of the stock had risen from $.30 to $.45 per share. Nevertheless, Appellants agreed to continue with the order, but informed Appellees that they were only willing to buy an amount equal to $72,000.
When Appellants received confirmation of the purchase, however, it was discovered *1018 that Appellees had purchased considerably more than the requested amount. It was also discovered that Appellees mistakenly purchased Discovery Zone's prebankruptcy stock, which had been rendered valueless prior to Appellees' purchase. As a result, Appellants were required to deposit another $22,000 into their account.
The Appellants instituted arbitration proceedings against the Appellees alleging breach of contract. The essence of their claim was that the Appellees breached implied duties of care established by the brokerage agreement. An arbitration panel heard Appellants' claim and awarded them $81,500 in total damages. Following the award, Appellants filed an amended motion for attorney's fees. The basis for awarding fees, Appellants argued, is the brokerage agreement and the reciprocal attorney's fees provision contained in section 57.105(5), Florida Statutes, which states:
If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract.
Appellees filed a motion to dismiss, arguing, inter alia, that Appellants were not entitled to attorney's fees because New York law does not allow for reciprocal fees.[2] The trial court concluded that Florida law applies and that the "limited" attorney's fees provision in the brokerage agreement does not cover the claims advanced by the Appellants. Accordingly, the trial court granted Appellees' motion to dismiss.
The issue we must resolve is whether Florida or New York law applies. In resolving this issue, because the brokerage agreement specifically provides that the "law of the State of New York" governs, we must consider the law of that state regarding reciprocal attorney's fees. See Information Tech. & Eng'g Corp. v. Reno, 813 So.2d 1053 (Fla. 4th DCA 2002). In New York, the only statute that grants reciprocal attorney's fees deals with landlord/tenant disputes. See N.Y. Real Prop. Law § 234 (McKinney 2000). There is no provision which allows reciprocal fees with regard to an action on a contract. Because the agreement only allows attorney's fees to Appellees in collection cases, Appellants would be precluded from attorney's fees as the prevailing party in New York.
In these instances, the Florida courts will generally enforce choice-of-law provisions "unless the law of the chosen forum contravenes strong public policy." Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co., 761 So.2d 306, 311 (Fla. 2000) (footnote omitted) (citing Punzi v. Shaker Adver. Agency, Inc., 601 So.2d 599 (Fla. 2d DCA 1992)). This rule is premised on the presumption that choice-of-law provisions are valid unless the party seeking to avoid enforcement of them sufficiently carries the burden of showing that the foreign law contravenes strong public policy of the forum jurisdiction. Id. The term "strong public policy" means that the public policy must be sufficiently important that it outweighs the policy protecting freedom of contract. Id. at 312. Thus, routine policy considerations are insufficient *1019 to invalidate choice-of-law provisions in a contract. Mazzoni.
In Florida, the public policy consideration underlying section 57.105(5) "is to provide mutuality of attorney's fee remedy in contract cases." County Waste, Inc. v. Public Storage Mgmt., Inc., 582 So.2d 87, 87 (Fla. 3d DCA 1991). Because New York law does not similarly provide for reciprocal attorney's fees, except in cases involving landlord/tenant disputes, application of New York law in the instant case would obviously contravene Florida's public policy. Therefore, we must next determine whether the public policy underlying section 57.105(5) is sufficiently "strong" to enable this court to hold that the choice-of-law provision in the brokerage agreement should not be enforced. This issue was specifically addressed by the court in Precision Tune Auto Care, Inc. v. Radcliffe, 815 So.2d 708 (Fla. 4th DCA 2002), a case that is strikingly similar to the instant case.
In Precision Tune, James Radcliffe and Performance Concepts, Inc. entered into a franchise agreement with Precision Tune Auto Care, Inc., which agreement authorized Performance and Radcliffe to operate a "Precision Tune" franchise in West Palm Beach. The agreement specifically provided that it was to be interpreted and construed under the laws of Virginia. Precision subsequently attempted to terminate the franchise, and shortly thereafter, Performance and Radcliffe filed suit against Precision based on contract and tort claims. Performance and Radcliffe filed a motion for attorney's fees based on the contract which provided that in the event of any default, Performance and Radcliff would have to pay Precision all costs and expenses, including reasonable legal fees incurred `"in connection with obtaining damages or injunctive or other relief for the enforcement of any provisions of this agreement."' Id. at 710 (footnote omitted). The motion also alleged that "`given the case law here in Florida, if a unilateral provision for the recoverability of attorney's fees is in a contract, Florida construes the recoverability of attorney's fees for both parties.'" Id. at 709.
A judgment was rendered in favor of Performance and Radcliff. Recognizing that their entitlement to attorney's fees turned on the applicability of the provisions of section 57.105(2)[3] and that Virginia law contained no similar statute, the trial court granted the motion and awarded Performance and Radcliff attorney's fees. The Fourth District Court reversed because it could "detect no Florida policy which would override the parties' ability to freely contract on the issue of attorney's fees." Id. at 710.
For purposes of determining whether a Florida public policy sufficiently outweighs application of a choice-of-law provision in a contract, we see little distinction between a contract regarding the purchase of stock and a contract regarding the purchase of a franchise when both contain similar provisions regarding attorney's fees and choice-of-law clauses. Like the court in Precision Tune, we fail to detect any strong public policy underlying reciprocal fee awards that would outweigh the policy protecting the freedom of contract.
We find further support for our conclusion in examples of other statutory provisions which the Florida Supreme Court has held are not founded on such strong public policy to justify failure to apply a *1020 choice-of-law provision in a contract. For example, usury laws and statute of limitations are not founded on such strong public policy.[4] Surely, if the courts do not attach a strong public policy to Florida's usury laws and statutes of limitations, we should not attach a strong public policy to the provisions of section 57.105(5), which allows reciprocal attorneys fees in contract actions.
We, therefore, conclude that invocation of strong public policy to avoid application of the provisions of the brokerage agreement requiring application of New York law is unwarranted in this case. Hence we disagree with the trial court that Florida law applies, but, nevertheless, agree that dismissal was proper. The trial court made the right decision, albeit for the wrong reason.
AFFIRMED.
PETERSON and ORFINGER, R.B., JJ., concur.
NOTES
[1] $2000 worth of stock was for Skinner's individual account; the remainder was to be placed in the joint account.
[2] A second issue raised was whether, even if Florida law applies, section 57.105(5) would allow fees. Appellees argued it would not because the underlying action was not the type of claim for which the agreement allowed an award of attorney's fees. We need not address or resolve this issue because our resolution of the first issue is dispositive of the case.
[3] The provisions of section 57.105(2) are now found in section 57.105(5). Chapter 99-225, section 4, Laws of Florida, rewrote this statute and essentially transferred the provisions of subsection (2) into new subsection (5) without further change.
[4] See Burroughs Corp. v. Suntogs of Miami, Inc., 472 So.2d 1166, 1169 (Fla.1985) ("[T]he contractual provision shortening the period of time for filing a suit was not contrary to a strong public policy."); Morgan Walton Props., Inc. v. International City Bank & Trust Co., 404 So.2d 1059, 1062 (Fla.1981) ("The `public policy' against usury ... was not so strong as to overcome the policy in favor of giving effect to the expressed intentions of contracting parties, even though as a factual matter the designation may indeed have been motivated by a desire to `evade' Florida's usury law.") (discussing Continental Mortgage Investors v. Sailboat Key, Inc., 395 So.2d 507 (Fla.1981)). In Continental Mortgage, the court specifically stated, "Although a few jurisdictions do attach such a public policy to their usury laws, it is generally held that usury laws are not so distinctive a part of a forum's public policy that a court, for public policy reasons, will not look to another jurisdiction's law which is sufficiently connected with a contract and will uphold the contract." Continental Mortgage, 395 So.2d at 509 (citations omitted).