HAZOURI, J.
 

 This appeal ai-ises from the trial court’s order granting attorney’s fees to Christopher M. Larmoyeux and Ex*ic Hewko un
 
 *1069
 
 der section 57.105, Florida Statutes (2003). The trial court awarded fifty percent of the fees against Robert M. Montgomery, Jr., and Montgomery and Larson, LLP (Montgomery) and fifty percent of the fees against Montgomery’s counsel, Beasley, Hauser, Kramer, Leonard & Galardi, P.A. (Beasley). The trial court found, pursuant to section 57.105, that claims made by Montgomery and Beasley as against Lar-moyeux and Hewko had no basis in law and fact, and that there was not even the semblance of a good faith attempt by Montgomery or his counsel, Beasley, to substantiate their claims of fraud and conspiracy against Larmoyeux and Hewko. For reasons stated hereinafter, we reverse the award of fees to Larmoyeux and affirm as to the fees awarded to Hewko.
 

 This case arises out of a very fractious relationship between Larmoyeux and Montgomery. For twelve years, Larmoy-eux was a partner in Montgomery & Lar-moyeux, a law firm in West Palm Beach: In December 2000, Montgomery terminated Larmoyeux. Upon leaving the firm, Larmoyeux took with him eleven cases. Eight of those cases settled and are not at issue. The three remaining cases, which are at issue here, resulted in recovery of monies by settlement in two of the cases and by jury verdict in the third. These cases are
 
 Schultz v. Clark, Simmons v. Niedzwiedzki,
 
 and
 
 Wyatt v. Milner.
 

 Pursuant to a partnership agreement that existed between Montgomery and Larmoyeux, Montgomery claimed entitlement to eighty percent of the gross fees recovered in all of the eleven cases Lar-moyeux took with him. The partnership agreement provided that Larmoyeux would “pay the firm as liquidated damages eighty percent (80%) of all fees collected from such clients and eighty percent (80%) of any costs advanced by the firm with respect to any such client matter as such amounts are received
 
 by Larmoyeux.”
 
 (Emphasis in original). Montgomery and Larmoyeux submitted the matter of the fees for all eleven cases to arbitration. Pursuant to the partnership agreement, the arbitration award directed that Lar-moyeux, in all eleven cases, remit to the firm “ ‘80% of the fees collected
 
 by him
 
 [emphasis supplied] and 80% of the firm’s costs’ ” within ten days “of his receipt by him of such fees and costs.”
 

 Montgomery filed charging liens in all three eases at issue here. He also filed this separate action, alleging the following Counts:
 

 I. For Fraud, against LARMOYEUX and attorney HEWKO, claiming that they had fraudulently entered “a sham fee agreement” providing for HEWKO to receive a large percentage of the over-all fees in
 
 Wyatt v. Milner,
 
 which was filed in this Circuit, “to deprive Montgomery of the fees and costs owed under the Partnership Agreement and the Arbitration Award.”
 

 II. For Fraud, against LARMOYEUX and attorney CARR, claiming that they had fraudulently entered “a sham fee agreement” providing for CARR to receive a large percentage 'of the over-all fees in
 
 Simmons v. Niedzwiedzki,
 
 which was filed in the 11th Circuit, in and for Miami-Dade County, “to deprive Montgomery of the fees and costs owed under the Partnership Agreement and the Arbitration Award.”
 

 III. For Civil Conspiracy, against LARMOYEUX, attorney HEWKO (LARMOYEUX’s co-counsel in
 
 Wyatt v. Milner
 
 [) ], attorney .CARR (LARMOY-EUX’S co-counsel in
 
 Simmons v. Nied
 
 zwiedzki), Defendant CHARLES L. ROBINSON....
 

 IV. Breach of Fiduciary Duty' against LARMOYEUX;
 

 
 *1070
 
 V. Breach of Contract against LAR-MOYEUX;
 

 VI. Breach of Duty of Good Faith and Fair Dealing against LARMOYEUX;
 

 VII. Tortious Interference with Contract against HEWKO;
 

 VIII. Tortious Interference with Contract against CARR;
 

 IX. Declaratory Relief against LAR-MOYEUX and HEWKO, seeking a declaration that the fee agreement between those two attorneys in the Wyatt case is void, and that client Wyatt owes 100% of all the fees generated “are owed exclusively by the client to Larmoyeux, who in turn owes 80% to Montgomery.”
 

 (footnotes omitted).
 

 Without leave of court, Montgomery also prayed for punitive damages.
 

 On May 14, 2003, Montgomery and Beasley filed a second amended complaint, which contained the same allegations stated above. On June 4, 2003, Larmoyeux sent notice to Montgomery and Beasley that he was seeking sanctions under section 57.105. He filed his motion with the trial court on June 6, 2003. On June 6, 2003, Hewko sent the same notice to Montgomery and Beasley, but did not file his motion with the trial court until July 8, 2003.
 

 On April 15, 2004, the trial court granted a motion to stay this case, stating that it could not proceed because the trial courts in which the charging liens were filed had exclusive .jurisdiction to determine the issue of Montgomery and Lar-moyeux’s fees in those cases. Montgomery and Beasley petitioned this Court, seeking a writ of certiorari and asking this Court to declare that the trial court erred in holding that the other courts were the proper forum for Montgomery and Beasley’s claims. This Court denied the petition. The parties proceeded to litigate the charging liens in the
 
 Wyatt
 
 and
 
 Simmons
 
 cases.
 

 In
 
 Wyatt,
 
 the court found that the charging lien of Montgomery was valid, but found that Montgomery was entitled to eighty percent of only the fee collected by Larmoyeux — not eighty percent of the entire fee. The court also determined that the evidence presented was insufficient to support the claims of fraud, tortious interference, or conspiracy on the part of Wyatt, Hewko, or Larmoyeux.
 

 In
 
 Simmons,
 
 the trial court found that attorney Carr was primarily responsible for the settlement of that tort case for $1,000,000. The court found Larmoyeux’s claim that he spent 120 hours on the case acceptable, awarding him, on the basis of quantum meruit, an hourly rate of $600, which equaled $72,000. The court then awarded eighty percent of the $72,000 ($57,600) to Montgomery and twenty percent ($14,400) to Larmoyeux on the basis of quantum meruit. The court also found no evidence of fraud, collusion, or any effort to deprive Montgomery of a fee. It
 
 “affirmatively
 
 determine[d] that there was no collusion nor was there any effort made to deprive Montgomery of a fee in this case.”
 

 In
 
 Schultz,
 
 Larmoyeux entered into a settlement agreement with the defendant Clark, and received a $40,000 fee. On February 8, 2005, Larmoyeux paid Montgomery $36,409.50, representing eighty percent of the fee plus costs and interests.
 

 Following the resolution of the charging liens, Montgomery voluntarily dismissed his claims in the instant case. Thereafter, the claims for section 57.105 fees proceeded to evidentiary hearings on entitlement and amount of fees to be awarded.
 

 In granting Larmoyeux and Hewko’s section 57.105 motions, the trial court found that “[tjhere has been presented to
 
 *1071
 
 this Court nothing to suggest the existence of even a semblance of a good faith attempt by [Montgomery] or [his] counsel to substantiate the[ ] claims of fraud and conspiracy.” The trial court also held that Montgomery’s claims “were wholly supposition; at the very least, an effort on their [Montgomery and Beasley’s] part to uncover supportive facts was needed to show some scintilla of legitimacy to the[se] claims. Not even a rudimentary effort to do so was ever made.”
 

 In a separate final judgment, the trial court calculated the award of attorney’s fees for Larmoyeux and Hewko. Based on a summary of work and corroborating expert testimony, it found that the amount of reasonable hours spent by Larmoyeux was 349.4 hours and the amount of hours spent by Hewko was 440.4 hours. It also found a reasonable hourly rate of $475 per hour. The trial court awarded $209,190 to Hewko and $165,965 to Larmoyeux, requiring Montgomery and Beasley to each pay fifty percent.
 

 Montgomery and Beasley contend that Larmoyeux failed to comply with time requirements of section 57.105 and, therefore, the award of attorney’s fees should be reversed. We agree. As to Hewko’s claim for attorney’s fees, Montgomery and Beasley contend that there was not competent, substantial evidence to support the trial court’s finding that their claim against Hewko was without foundation in fact or law and was not brought in good faith. We disagree.
 

 As to Larmoyeux’s claims under section 57.105(4), the statute states that: “A motion by a party seeking sanctions under this section must be served but may not be filed with or presented to the court unless, within 21 days after service of the motion, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.”
 

 Larmoyeux argues that, although he was not in strict compliance with section 57.105(4), it was not until May 17, 2006, over thirty-five months after receiving his 57.105 motion, that Montgomery and Beasley filed a notice of voluntary dismissal and, therefore, they had more than sufficient time to take advantage of the safe-harbor provision of section 57.105(4). In support of his position, Larmoyeux cites this Court’s decision in
 
 Maxwell Bldg. Corp. v. Euro Concepts, LLC,
 
 874 So.2d 709, 711 (Fla. 4th DCA 2004), which stated that the primary purpose of the safe-harbor provision of section 57.105(4) “is not to spring a procedural trap on the unwary so that valid claims are lost. Rather, its function is to give a pleader a last clear chance to withdraw a frivolous claim.... ”
 

 The facts in
 
 Maxwell
 
 are distinguishable and, thus, the assertion that
 
 Maxwell
 
 supports Larmoyeux’s argument is not well taken.
 

 Maxwell sued Euro Concepts for breach of contract. Euro Concepts filed a counterclaim raising three claims: civil theft, conversion, and breach of contract. Three months later, Euro Concepts amended its counterclaim, maintaining the original civil theft and conversion counts. Thirty days later, it filed a second amended counterclaim, which contained the identical civil theft and conversion counts.
 

 In complying with section 57.105(4), Maxwell served the motion for attorney’s fees on September 11, 2002. On September 17, 2002, Maxwell moved for a summary judgment as to the civil theft and conversion counts. On October 4, 2002, Maxwell, pursuant to section 57.105, moved for attorney’s fees pertaining to its civil theft and conversion claims.
 

 Thereafter, Euro Concepts filed a third amended counterclaim on December 6, 2002, which contained the same civil theft and conversion counts that had been part of the case since the original counterclaim.
 
 *1072
 
 The trial court subsequently granted Maxwell’s motion for summary judgment on the civil theft and conversion claims. In so holding, it found that Euro Concepts and its attorney, Michael Banks, knew or should have known at the inception of the case that the claims raised by the third amended counterclaim were meritless, as they were not supported by any material fact or the law as applied to any material fact. The court ordered Euro Concepts and Banks to each pay one-half of Maxwell’s attorney’s fees.
 

 Banks moved for rehearing, arguing that Maxwell failed to comply with the statutory notice requirement of section 57.105 because the October 4, 2002, motion was directed at the second amended counterclaim, not the third amended counterclaim. The trial court granted the motion for rehearing and vacated its order. In vacating its previous order, the trial court ruled that Maxwell was required to file a motion for attorney’s fees directed at the third amended counter-claim.
 

 In reversing the trial court, this Court stated:
 

 In this case, Euro Concepts and Banks had well more than twenty-one days to withdraw the civil theft and conversion claims, so that we do not find a section 57.105(4) violation that precludes recovery. The claims first appeared in the March 29, 2002 counterclaim and were included in the same form in all the amended counterclaims. Maxwell mounted its first section 57.105 attack on the civil theft and conversion counts in a motion filed on October 4, 2002, which had been served in compliance with section 57.105(4) on September 11, 2002. Banks and Euro Concepts did not eliminate the offending counts from the case. Instead, they filed a third amended counterclaim on December 6, 2002, which contained the identical civil theft and conversion counts. Banks and Euro Concepts had the chance afforded by the statute to withdraw the claims before section 57.105 liability was triggered; they did not avail themselves of the opportunity.
 

 Maxwell,
 
 874 So.2d 709, 711-12.
 

 Unlike Larmoyeux’s claim, Maxwell complied with the filing requirements of the twenty-one day safe-harbor provision. Section 57.105(4) does not require a safe-harbor for each amendment to a complaint when, as in
 
 Maxwell,
 
 the claims for which the 57.105 fees are sought remain in the amendment.
 

 Section 57.105(4) could not be clearer in its requirement that a motion seeking sanctions may not be filed with or presented to the court within twenty-one days of service of the motion. Statutes authorizing awards of attorney’s fees are in derogation of common law and must be strictly construed.
 
 Larkin v. Buranosky,
 
 973 So.2d 1286, 1287 (Fla. 4th DCA 2008) (stating that “ ‘[a]ny statute that deviates from the common law approach must be strictly construed’” (quoting
 
 Hilyer Sod, Inc. v. Willis Shaw Exp., Inc.,
 
 817 So.2d 1050, 1054 (Fla. 1st DCA 2002)));
 
 see, e.g., Cano v. Hyundai Motor Am., Inc.,
 
 8 So.3d 408 (Fla. 4th DCA 2009) (holding that “[s]ection 768.79 and rule 1.442 are strictly construed because they are ‘in derogation of the common law rule that each party pay their own fees’ ” (quoting
 
 Brower-Eger v. Noon,
 
 994 So.2d 1239, 1241 (Fla. 4th DCA 2008)));
 
 see also Anchor Towing, Inc. v. Fla. Dep’t of Transp.,
 
 10 So.3d 670 (Fla. 3d DCA 2009) (holding that a party failed “to meet the mandatory notice requirement of section 57.105(4)” by sending a letter instead of “the statutorily required motion” to opposing counsel, as statutes “in derogation of the common law” are “strictly construed” (citing
 
 Nathan v. Bates,
 
 998 So.2d 1178, 1179 (Fla. 3d DCA 2008)));
 
 Burgos v. Burgos,
 
 948 So.2d 918, 919 (Fla. 4th DCA 2007) (holding that,
 
 *1073
 
 because a party “failed to comply with the requirements of section 57.105(4)” by filing with the trial court a section 57.105 motion three days after the filing of a motion of voluntary dismissal upon which the section 57.105 motion was based, they were ineligible for an award of attorney’s fees under section 57.105).
 

 As such, Larmoyeux’s failure to comply with the mandatory requirements of section 57.105(4) did not constitute a procedural trap sprung on the unwary.
 

 We now turn to Hewko’s claim for attorney’s fees, as awarded pursuant to section 57.105(1)(a)-(b).
 
 [1]
 
 Unlike Larmoy-eux, Hewko complied with section 57.105(4)’s time requirements, having filed his motion with the trial court thirty-two days after it was served on Montgomery and Beasley. In reviewing an award of attorney’s fees under section 57.105, “ ‘this court must look to see if the trial court abused its discretion in finding no justicia-ble issues of fact or law.’ ”
 
 Yakavonis v. Dolphin Petroleum, Inc.,
 
 934 So.2d 615, 618 (Fla. 4th DCA 2006) (citations omitted). A trial court’s findings must also “ ‘be based upon substantial competent evidence presented to the court at the hearing on attorney’s fees or otherwise before the court and in the trial record.’”
 
 Id.
 
 (quoting
 
 Weatherby Assocs., Inc. v. Ballack,
 
 783 So.2d 1138, 1141 (Fla. 4th DCA 2001)).
 

 The trial court’s determination that Montgomery and Beasley knew or should have known that their claims against Hewko for fraud, conspiracy to commit fraud, and tortious interference with contract were not supported by the material facts or the application of then-existing law to those material facts, as well as the trial court’s finding that the claims were not made in good faith, was supported by competent, substantial evidence. We, accordingly, affirm the award of attorney’s fees to Hewko.
 

 Affirmed in Part; Reversed in Part.
 

 FARMER and TAYLOR, JJ„ concur.
 

 [1]
 

 . Section 57.105(1), Florida Statutes (2008), states:
 

 (1) Upon the court’s initiative or motion of any party, the court shall award a reasonable attorney's fee to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party’s attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:
 

 (a) Was not supported by the material facts necessary to establish the claim or defense; or
 

 (b) Would not be supported by the application of then-existing law to those material facts.
 

 However, the losing party’s attorney is not personally responsible if he or she has acted in good faith, based on the representations of his or her client as to the existence of those material facts. If the court awards attorney's fees to a claimant pursuant to this subsection, the court shall also award prejudgment interest.