**David Michael WILLIAMS, et al.,**

v.

**Timothy Wayne SMITH.**

Court of Appeals of Tennessee, at Nashville.

July 30, 2014 Session.

Nov. 6, 2014.

Application for Permission to Appeal Denied by Supreme Court March 12, 2015.

Andrew R. Binkley and Patrick Shea Callahan, Cookeville, Tennessee, for the appellants, David Michael Williams and Summer Elizabeth Williams.

Jeremy Ross Hutchison and Joshua Gerald Offutt, Nashville, Tennessee, for the appellee, Geico General Insurance Company.

## OPINION

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL McBRAYER, JJ., joined.

This appeal arises from an underinsured motorist coverage claim that hinges on the validity of a choice of law provision in the insurance policy. Plaintiffs were involved in a car wreck in Tennessee while driving a vehicle they borrowed from North Carolina residents. Although the borrowed vehicle was owned by North Carolina residents, the car owners had elected an insurance policy with a Missouri choice of law provision because their daughter principally used the car in Missouri where she attended college. At issue in this appeal is whether the law of Missouri or North Carolina controls. If Missouri law controls, there is no underinsured motorist coverage; if North Carolina law controls, there is coverage. The trial court found that the Missouri choice of law provision was valid and enforceable because the choice of law provision was not contrary to a fundamental policy of North Carolina. We affirm.

On July 17, 2010, David and Summer Williams and their young child, Elle, ("Plaintiffs"), were involved in an automobile accident in Tennessee. At the time of the accident, Plaintiffs were moving from North Carolina to Missouri and were driving a borrowed vehicle owned by North

Carolina residents, Joseph and Amy Rieg. While traveling through Putnam County, Tennessee, Plaintiffs were hit head-on by Timothy Wayne Smith ("Defendant"), who was traveling east in the westbound lanes of Interstate 40.

At the time of the accident, Defendant was insured with the minimum policy limits required under Tennessee law, which provided liability coverage of $25,000 per person and $50,000 per accident. The Riegs' vehicle was registered in North Carolina and insured by a Missouri insurance policy through Government Employees Insurance Company ("GEICO"). Mrs. Rieg purchased the policy after seeking advice from her GEICO representative, who advised her that she needed a "Missouri Policy" so her daughter, Joanna, could use the vehicle while attending college in Missouri. The insurance policy included a Missouri choice of law provision and provided $50,000 per person, and $100,000 per accident in *uninsured* motorist coverage. However, the policy did not provide *underinsured* motorist coverage, and such coverage was not required under Missouri law.

Plaintiffs filed this action and served GEICO as an alleged uninsured/underinsured motorist carrier.[1] Plaintiffs alleged the Missouri choice of law provision was invalid and that North Carolina law controls, which mandates underinsured motorist coverage. North Carolina requires minimum automobile insurance liability limits of $30,000 per person and $60,000 per accident.[2] Moreover, a driver with an automobile liability insurance policy with less than the minimum limits as required by North Carolina law is considered an

"uninsured motorist."[3] Because Defendant's liability policy provides only $25,000 per person and $50,000 per accident, Defendant would be considered an "uninsured motorist" under North Carolina law. Thus, if the choice of law provision is unenforceable, then North Carolina law controls, and GEICO is required to provide underinsured motorist coverage in excess of the coverage provided by Defendant's policy; if the choice of law provision is enforceable, then Missouri law controls, and there is no underinsured motorist coverage.

Plaintiffs and GEICO filed competing motions for summary judgment, and the trial court heard oral arguments on September 20, 2013. The trial court granted GEICO's motion for summary judgment and denied Plaintiffs' motion, finding the choice of law provision in the insurance policy to be valid and enforceable. Plaintiffs appeal.

### STANDARD OF REVIEW

■ This appeal arises from the grant of summary judgment, which is appropriate when a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Tenn. R. Civ. P. 56.04; *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn.2003). The material facts with respect to the issue raised on this appeal are not in dispute; accordingly, our review is de novo on the record with no presumption of correctness as to the trial court's conclusions of law. *See* Tenn. R.App. P. 13(d); *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn.2003).

---

1. Plaintiffs were covered under their own automobile insurance policy with Farm Bureau Mutual Insurance Company that provided uninsured motorist coverage in the amount of $30,000 per person and $60,000 per accident.

2. N.C. Gen.Stat. Ann. § 20–279.21(b)(2).

3. N.C. Gen.Stat. Ann. § 20–279.21(b)(3).

## ANALYSIS

■ At issue on appeal is whether the substantive law of Missouri or North Carolina will govern the construction of the insurance policy at issue. When determining which state's law to apply to a particular dispute, a choice of law analysis is appropriate using the rules applicable in the forum court's state. *Gov't Emp. Ins. Co. v. Bloodworth*, No. M2003–02986–COA–R10–CV, 2007 WL 1966022, at *26 (Tenn.Ct.App. June 29, 2007).

■ Tennessee's conflict of law doctrine applicable to contractual claims is as follows:

> Tennessee follows the rule of *lex loci contractus*. This rule provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent. *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn.1973). If the parties manifest an intent to instead apply the laws of another jurisdiction, then that intent will be honored provided certain requirements are met. The choice of law provision must be executed in good faith. *Goodwin Bros. Leasing, Inc. v. H & B Inc.*, 597 S.W.2d 303, 306 (Tenn.1980). The jurisdiction whose law is chosen must bear a material connection to the transaction. *Id.* The basis for the choice of another jurisdiction's law must be reasonable and not merely a sham or subterfuge. *Id.* Finally, the parties' choice of another jurisdiction's law must not be "contrary to 'a fundamental policy' of a state having [a] 'materially greater interest' and whose law would otherwise govern." *Id.*, n. 2 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1971)).

*Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 474–75 (Tenn.Ct.App.2003) (quoting *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 650 (Tenn.Ct.App.1999)).

■ The trial court held that the choice of law provision was executed in good faith, that Missouri law bears a material connection to the transaction, and that the basis for the choice of Missouri law was reasonable and not merely a sham or subterfuge. Relying on *Government Employees Insurance Company v. Bloodworth*, the trial court found that "the law of the state where the insured risk is located will frequently be applied as controlling (when the parties have not effectively chosen the law applicable to their contract) because that jurisdiction has an important and material connection to the transaction between the parties and the nature of the risk insured." As this court explained in *Bloodworth:*

> The object that is the subject of the insurance has its principal location in the state where it will be used a majority of time during the insurance period. RESTATEMENT (SECOND) OF CONFLICTS § 193, (cmt.b). In the case of an automobile, the parties to the insurance contract will generally know where it will be kept and operated the majority of the time. *Id.* There is good reason for using the law of the principal location of the insured risk. "This location has an intimate bearing upon the risk's nature and extent and is a factor upon which the terms and conditions of the policy will frequently depend." RESTATEMENT (SECOND) OF CONFLICTS § 193 (cmt. c). Accordingly, the location of the risk is of concern to the parties to the insurance contract. *Id. See, e.g., Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d at 251 (stating that an insurance policy is governed by the law of the principal location of the insured risk during the term of the policy).

*Bloodworth,* 2007 WL 1966022, at \*27. The trial court applied this reasoning to the facts of this case to determine that Missouri had a material connection to the transaction and that a reasonable basis existed for using Missouri law.

The trial court ultimately held that the choice of law provision was valid and enforceable because the parties' choice of Missouri law was not contrary to a fundamental policy of North Carolina. In determining what constitutes a "fundamental public policy," the trial court relied upon a North Carolina Supreme Court case that observed:

> [T]he mere fact that the law of the forum differs from that of the other jurisdiction does not mean that the foreign statute is contrary to the public policy of the forum. *Bradford Electric Light Co. v. Clapper,* 286 U.S. 145, [52 S.Ct. 571, 76 L.Ed. 1026] (1932). To render foreign law unenforceable as contrary to public policy, it must violate some prevalent conception of good morals or fundamental principle of natural justice or involve injustice to the people of the forum state. *Ellison v. Hunsinger,* [237 N.C. 619,] 75 S.E.2d 884 ([]1953); *Howard v. Howard,* [200 N.C. 574,] 158 S.E. 101 ([]1931). This public policy exception has generally been applied in cases such as those involving prohibited marriages, wagers, lotteries, racing, gaming, and the sale of liquor. *Howard v. Howard,* [200 N.C. 574] 158 S.E. 101.

*Boudreau v. Baughman,* 322 N.C. 331, 368 S.E.2d 849, 857–58 (1988) (applying Florida's statute of repose does not violate public policy of North Carolina); *accord Mosqueda v. Mosqueda,* 218 N.C.App. 142, 721 S.E.2d 755, 760 (2012) (Alabama automobile guest statute does not violate public policy of North Carolina). The trial court held that:

> [t]he interest of the state of North Carolina in regulating insurance policies insuring an automobile primarily in Missouri would not appear to constitute a 'fundamental public policy,' as the North Carolina courts have construed that term in the context of their own conflict of laws analyses. In this case, the court cannot conclude that the choice of another state's law (here, Missouri's) is repugnant to the prevalent conceptions of good morals or the fundamental principles of natural justice; neither would the choice of Missouri law appear to work an injustice on the people of North Carolina, the state whose law would otherwise apply under the *lex loci contractus* rule.

Thus, the trial court found the requirements of the *Messer* analysis were met, and the choice of law provision in the insurance policy was valid and enforceable.

On appeal, Plaintiffs first contend that, since the insurance policy is a contract formed in North Carolina, the policy is thus governed by North Carolina law under the rule of *lex loci contractus.* However, the Tennessee Supreme Court has held that "a contract is presumed to be made with reference to the law of the place where it was entered into *unless it appears it was entered into in good faith with reference to the law of some other state."* *Ohio Cas. Ins. Co. v. Travelers Indem. Co.,* 493 S.W.2d 465, 467 (Tenn. 1973) (quoting *Deaton v. Vise,* 186 Tenn. 364, 210 S.W.2d 665, 668 (1948)) (emphasis added). This is the rule illustrated in *Messer,* which explains that if the parties express an intent to *"instead apply the laws of another jurisdiction,* then that intent will be honored provided certain requirements are met." *Messer,* 131 S.W.3d at 475 (emphasis added). Thus, our analysis hinges upon whether the Missouri choice of law provision meets the require-

ments established in *Messer* because the parties expressed a contrary intent to apply the laws of Missouri.

Nevertheless, Plaintiffs contend the choice of law provision is unenforceable because the parties' choice of Missouri law is "contrary to 'a fundamental policy' of a state having [a] 'materially greater interest' and whose law would otherwise govern." *Messer*, 131 S.W.3d at 475 (internal citations omitted). Specifically, Plaintiffs argue that North Carolina has a materially greater interest, and that the parties' choice of Missouri law is contrary to North Carolina's fundamental policy of regulating insurance.

In support of their argument, Plaintiffs rely on the comments to the Restatement (Second) of Conflict of Laws § 187, which provide in part:

> To be "fundamental," a policy must in any event be a substantial one.... [A] fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power. Statutes involving the rights of an individual insured as against an insurance company are an example of this sort[.]

Restatement (Second) of Conflict of Laws § 187 cmt. g (1971). Plaintiffs contend North Carolina's statutory regulations of insurance are mandatory and are of vital interest to the residents of North Carolina. Specifically, Plaintiffs point to N.C. Gen. Stat. Ann. § 58–3–1, which defines the scope and subject matter of North Carolina's power to regulate insurance policies:

> All contracts of insurance on property, lives, or interests in this State shall be deemed to be made therein, and all contracts of insurance the applications for which are taken within the State shall be

deemed to have been made within this State and are subject to the laws thereof.

And, in the specific context of automobile insurance, Plaintiffs point to N.C. Gen. Stat. Ann. § 20–279.21(b)(3), which defines North Carolina's powers as follows:

> No policy of bodily injury liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto, under provisions filed with and approved by the Commissioner of Insurance[.]

Plaintiffs therefore contend that these statutes reveal North Carolina's fundamental policy of regulating insurance which is "designed to protect a person against the oppressive use of superior bargaining power" in cases involving "the rights of an individual insured as against an insurance company." Restatement (Second) of Conflict of Laws § 187 cmt. g (1971). Specifically, Plaintiffs rely on a North Carolina Supreme Court case that utilized N.C. Gen.Stat. Ann. § 58–3–1 in its choice of law analysis to determine that North Carolina law governed an insurance policy applied for and issued in California. The court reasoned that "[m]ost of the vehicles insured were titled in [North Carolina] and plaintiff's transportation division is located in [North Carolina]." *Collins & Aikman Corp. v. Hartford Accident & Indem. Co.*, 335 N.C. 91, 436 S.E.2d 243, 245 (1993). Thus, because the insurance contract covered a majority of company vehicles that were titled and garaged in North Carolina, the court determined that N.C. Gen.Stat. Ann. § 58–3–1 mandates North Carolina law. *Id.* at 246; *see also Haugh v. Nationwide Mut. Fire Ins. Co.*, ——

N.C.App. ——, 761 S.E.2d 754 (N.C.Ct. App.2014). Plaintiffs thus contend that, by delivering a policy of insurance to North Carolina providing coverage on a vehicle registered in North Carolina, GEICO subjected itself to the laws of North Carolina.

The facts of this case, however, are distinguishable from those in *Collins & Aikman Corporation.* While the court noted that most of the insured vehicles were titled in North Carolina, it also focused on the fact that the transportation division was located in North Carolina and, thus, that most of the vehicles were *garaged* in that state. Here, although the vehicle was registered in North Carolina and owned by North Carolina residents, it was seldom used in North Carolina. To the contrary, the principal location and use of the insured vehicle was in Missouri, where the Riegs' daughter attended college; therefore, the principal risk associated with the vehicle was in Missouri, not North Carolina.

The foregoing notwithstanding, and as the trial court noted, N.C. Gen.Stat. Ann. § 58–3–1 is generally used as North Carolina's choice of law statute, which would apply if North Carolina were the forum state. *St. Paul Fire and Marine Ins. Co. v. Hanover Ins. Co.*, 187 F.Supp.2d 584, 587 (E.D.N.C.2000) (citing N.C. Gen.Stat. Ann. § 58–3–1 as North Carolina's choice of law statute governing insurance policies); *see also Seneca Specialty Ins. Co. v. Dockside Dolls, Inc.*, No. 3:12CV19–REP–DJN, 2012 WL 3579879, at *4 (E.D.Va. June 22, 2012). Thus, this statute does not affect this court's analysis under Tennessee choice of law principles.

We also find unpersuasive Plaintiffs' contention that the Missouri choice of law provision is contrary to a North Carolina policy concerning "the oppressive use of superior bargaining power." *Elec. & Magneto Serv. Co. v. AMBAC Int'l Corp.*, 941 F.2d 660, 663–64 (8th Cir.1991), *abrogated by Baxter Int'l, Inc. v. Morris*, 976 F.2d 1189 (8th Cir.1992) (holding that a notice provision in Missouri's statutory scheme regulating franchise agreements was a fundamental policy because the statute was designed to protect franchisees from the oppressive use of franchisor's superiority); *Barnes Group, Inc. v. C & C Products, Inc.*, 716 F.2d 1023, 1037 (4th Cir. 1983) (Hall, J., concurring in part and dissenting in part) (concluding that statutes regarding covenants not to compete prevent an individual from earning his livelihood and involve a fundamental policy, which is analogous to insurance cases where the oppressive use of superior bargaining power by the insurance company against the insured may be present); *Nelson v. Aetna Life Ins. Co.*, 359 F.Supp. 271, 294 (W.D.Mo.1973) (voiding a choice of law provision, the court noted "[i]t is quite difficult for us to conceive how one issued a certificate of insurance under a group policy negotiated by his employer with an insurance company would ever be in anything except a 'take-it-or-leave-it' position.").

The facts of this case do not indicate an oppressive use of superior bargaining power. Mrs. Rieg sought advice regarding her daughter's use of the vehicle in Missouri, and her GEICO representative recommended that a Missouri insurance policy was most appropriate. Mrs. Rieg chose to accept this advice, and obtained the Missouri policy. There is no evidence to support a finding that Mrs. Rieg was in a "take-it-or-leave-it" position. To the contrary, the Riegs were not required to purchase a Missouri policy; as the facts reveal, the Riegs had the option to acquire a Missouri policy or a North Carolina policy,

whichever they elected.[4]

In addition to the above reasoning, to render foreign law unenforceable as contrary to the public policy of North Carolina, the foreign law "must violate some prevalent conception of good morals or fundamental principle of natural justice or involve injustice to the people of the forum state." *Boudreau*, 368 S.E.2d at 857–58 (internal citations omitted). North Carolina's interest in the regulation of an insurance policy concerning an automobile registered in North Carolina but primarily operated in Missouri does not constitute a fundamental policy. This case does not involve good morals or fundamental principles of natural justice, such as prohibited marriages, wagers, lotteries, racing, gaming, or the sale of liquor. Furthermore, no injustice to the people of North Carolina would occur in the application of Missouri law to the facts of this case.

We, therefore, conclude that the Missouri choice of law provision is not contrary to a fundamental policy of North Carolina. Accordingly, the choice of law provision is valid and enforceable, and underinsured motorist coverage is not required under Missouri law. Therefore, the judgment of the trial court is affirmed.

## In Conclusion

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Plaintiff–Appellants.