CITY OF GERING, A MUNICIPAL CORPORATION, APPELLANT AND CROSS-APPELLEE, V. PATRICIA G. SMITH COMPANY (FORMERLY A. C. SMITH COMPANY, INC.), A CORPORATION, APPELLEE AND CROSS-APPELLANT.

337 N.W.2d 747

Filed August 12, 1983. No. 82-497.

Holtorf, Kovarik, Nuttleman, Ellison, Mathis & Javoronok, P.C., for appellant.

John Wright of Wright, Simmons & Selzer, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

KRIVOSHA, C.J.
The City of Gering, Nebraska, a municipal corporation, appeals from a judgment in the amount of $26,214 entered by the District Court for Scotts Bluff County, Nebraska, in favor of the City of Gering (City). The damages were awarded by the court, a jury having been waived, for alleged defective work performed by the A. C. Smith Company, Inc., for the City, and the City maintains that the award of damages is inadequate. The appellee, Patricia G. Smith Company, a corporation, formerly A. C. Smith Company, Inc. (Smith), has cross-appealed, maintaining

that the City, through its engineer, accepted the work with knowledge of the alleged defect and thereby waived any right to damages. In addition, Smith maintains that it is entitled to attorney fees pursuant to the terms of a contract entered into between the City and Smith. The trial court denied such fees. Because we believe that the trial court was in error in regard to the matter of waiver but correct with regard to the matter of attorney fees, we affirm in part and in part reverse.

The facts which give rise to this action involve the construction of a four-phase outfall sewer system constructed by the City. The planning and construction of the system, which relies upon gravity to move the sewage, began in 1973. Phase I, the lowest part of the system which empties into the Gering sewer lagoons, was completed in 1974. Phase II, which is an extension of phase I and which empties into phase I, was completed in 1975. Phase III, a further extension of the outfall sewer system which empties into phase II, was completed in 1975. Phase IV, the project involved herein, was designed to consist of 1,850 lineal feet of 21-inch sewer main. At its low end phase IV connects to the phase II sewer main, and at the high end it terminates in an inverse gravity siphon, to which is connected a sewer system built to serve a subdivision known as Pathfinder Subdivision. Also connected to phase IV, but at points in the middle, are sewers serving another subdivision which was added later.

Each phase of the system was designed and engineered by M. C. Schaff & Associates, Inc. Following the letting of bids, Smith was awarded the project for phase IV at a price of $47,070. The contract entered into between the City and Smith was a mimeographed document prepared by the City, containing several blank lines which were to be filled in by Smith to reflect the dollar figures agreed upon between the parties. No other terms of the contract

were subject to negotiation, but were, rather, a part of the bid process.

Certain of the relevant terms of the contract, which apparently were standard provisions for contracts entered into by the City, provided as follows:

"INTERPRETATION OF CONTRACT DOCUMENTS.

"The interpretation of all contract documents and plans, the inspection and approval of all materials and work, and all tests for the determination of guarantee shall be made by the Engineer, or under his direction."

"TESTING.

". . . Before final acceptance of the sewers, all parts of the sewers shall be clean, shall comply with all Contract Documents, and shall be in condition acceptable to the Engineer and the proper municipal authorities."

"DEFENSE COST.

"The Owner and the contractor agree that in the event either of them institutes a law suit against the other under this contract, the plaintiff in such law suit will pay to the defendent [sic] a portion of the defense cost including investigations, engineering fees, attorney fees, expert witness fees, and any other expenses of the defense which may be incurred. Such portion of the defense cost shall bear the same relation to the total defense cost as a dollar amount of the plaintiff claim which were [sic] not sustained by the court, bears to the total dollar amount of the plaintiff's claim. The plaintiff shall pay such portion of the defense cost to the defendent [sic] within thirty days after the defendent [sic] furnished the plaintiff with an itemized listing of the defense cost incurred."

Smith finished the construction of the sewer in November of 1976. On December 7, 1976, the engineer, M. C. Schaff & Associates, filed a certificate of completion, which stated as follows: "I hereby certify that Outfall Sewer - Phase IV and Sanitary

Sewer District No. 76-S5, providing for construction of sanitary sewer, under the contract between A.C. Smith Company, Inc., Contractor, and the City of Gering, Nebraska, has been fully completed according to the terms and stipulations of said contract, and I recommend that the work be accepted." The certificate was signed by M. C. Schaff as president of M. C. Schaff & Associates, Inc.

On December 13, 1976, the city council of the City of Gering, by resolution, made the following findings: "3. The Special Engineer in charge has filed a Certificate that the work has been completed in accordance with the terms of the contract and that he recommends that the City accept the work.

"4. The City of Gering does hereby find that the work has been completed and that the Certificate of Completion is on file and that the City does hereby accept the work."

The record is without dispute that the sewerline, as built by Smith, had a sag in it. But for this defect, there were no other complaints about the quality of the materials provided or workmanship done.

It further appears to be established without dispute that at least one construction engineer working on the project for Schaff knew that the sag existed before the engineer approved the project and the city council accepted it. He testified that others in the Schaff firm surveyed the completed project and that elevations indicating the sag were put on a set of "as-built plans" drawn up before the certificate of completion was submitted to the city council. Sometime after June 8, 1978, the City of Gering employed Wells Engineers, Inc., to review a plan prepared by Schaff for rebuilding phase IV to correct the sag. During the course of the trial, a dispute developed as to how the sag could have been more easily repaired and what should be the proper measure of damages. However, because we believe that this case must be disposed of on the issue of waiver,

we need not consider the matter of damages.

The law is clear and generally without dispute that "An express or implied acceptance of work as in compliance with a building contract operates as a waiver of defective performance, but this rule is inapplicable where the acceptance was under protest or induced by fraud, or where the defects were latent and unknown to the owner." 17A C.J.S. *Contracts* § 514(2)a at 840 (1963). As we noted in *Peckham v. Deans*, 186 Neb. 190, 192, 181 N.W.2d 851, 853 (1970): "Ordinarily, the acceptance of performance after a default in performance waives the right to rely upon the default." See, also, *Wegner v. West*, 169 Neb. 546, 100 N.W.2d 542 (1960).

While the City officials testified that they did not know of the defect before they voted to accept the work and had not seen the "as-built plans" which showed the existence of the sag, the uncontroverted evidence in the case established that the existence of the sag was at least known to the engineering firm before it prepared the certificate and urged acceptance of the work by the City. Gene Acklie, a project engineer for Schaff, testified that he personally knew of the existence of the sag before certification and that his knowledge was based upon a survey done by other employees of Schaff. Knowledge of the agent Schaff was knowledge of the principal, the City of Gering. In *Modern Woodmen of America v. Colman*, 68 Neb. 660, 664, 94 N.W. 814, 816 (1903), we said: "It is the duty of an agent to communicate to his principal all the facts concerning the service in which he is engaged that come to his knowledge in the course of his employment, and this duty, in a subsequent action between his principal and a third person, he is . . . conclusively presumed to have performed. This is the foundation of the doctrine, necessary to the public safety, that notice to an agent is notice to his principal." Thus, in the instant case, the knowledge of the engineer, acting as agent of the City, is knowl-

edge to the City. See, *Fuchs v. Parsons Constr. Co.*, 172 Neb. 719, 111 N.W.2d 727 (1961); *Omaha v. Hammond*, 94 U.S. 98, 24 L. Ed. 70 (1876).

The finding by the trial court, which we do not disturb on appeal, that the officials of the City did not in fact see the "as-built plans" or have actual knowledge of the sag does not affect the matter of waiver where the uncontroverted evidence is that with knowledge of that fact the engineer for the City of Gering executed the certificate of completion, certifying that the work had been "fully completed according to the terms and stipulations of said Contract" and that the engineer recommended that the work be accepted. The purpose of having such a certificate, according to the contract, is to both advise the City that the work it sought to have done was properly completed and to advise the contractor that the work as done was acceptable. If the City intended to object to the work because of the sag, a fact known to the City's engineer, it had to do so before accepting the work in reliance upon its engineer's certificate. The City has neither pled nor attempted to prove that acceptance by the City was induced by fraud on the part of Smith or was under protest by the City. The City may have some quarrel with its engineer, a fact we do not decide. What is clear, however, is that there was acceptance with knowledge and therefore waiver. The trial court should have found that the City waived the defect and could not thereafter seek to recover damages for it.

Smith, by way of cross-appeal, urges us to enforce the provisions of the City's contract which provide that in the event either of the parties institutes a lawsuit against the other and the party instituting the suit does not recover all damages sought, the defendant should be entitled to the cost of defense as determined in accordance with the terms of the contract. While this court has recently reexamined its position with regard to the awarding of attorney

fees and has, in limited instances, now made an exception (see *Holt County Co-op Assn. v. Corkle's, Inc.*, 214 Neb. 762, 336 N.W.2d 312 (1983)), we nevertheless continue to adhere to our long-standing rule first stated by us in *Higgins v. Case Threshing Machine Co.*, 95 Neb. 3, 7, 144 N.W. 1037, 1039 (1914), wherein we said: "It is the practice in this state to allow the recovery of attorneys' fees only in such cases as are provided for by law, or where the uniform course of procedure has been to allow such recovery. As a general rule of practice in this state, attorneys' fees are allowed to the successful party in litigation only where such allowance is provided by statute." See, also, *Gates v. Howell*, 211 Neb. 85, 317 N.W.2d 772 (1982). Thus, absent a statute or evidence of long-standing custom, we are not prepared to extend our prohibition concerning the allowance of attorney fees beyond that which we have recently provided in the *Holt County Co-op Assn. v. Corkle's, Inc.*, case, even though the contract provides for such fees. We do so on the basis of our earlier holdings to the effect that such contracts are contrary to public policy and therefore invalid. *Dow v. Updike*, 11 Neb. 95, 7 N.W. 857 (1881); *Security Co. v. Eyer*, 36 Neb. 507, 54 N.W. 838 (1893). See *Dodge v. Tulleys*, 144 U.S. 451, 12 S. Ct. 728, 36 L. Ed. 501 (1892). See, also, *Occidental Sav. & Loan Assn. v. Venco Partnership*, 206 Neb. 469, 293 N.W.2d 843 (1980). The trial court's refusal to award attorney fees in this case was correct.

The judgment of the trial court is therefore affirmed in part and in part reversed, and the cause is remanded with directions to dismiss.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED WITH DIRECTIONS TO DISMISS.