PAUL D. STEWART AND BEVERLY A. STEWART, APPELLEES, V. DARLENE A. BENNETT, TRUSTEE OF THE DARLENE A. BENNETT REVOCABLE TRUST, APPELLANT.

727 N.W.2d 424

Filed February 2, 2007. No. S-05-1100.

Lance D. Ehmcke, Joel D. Vos, and Jeremy J. Cross, of Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, L.L.P., for appellant.

Thomas A. Fitch, of Fitch Law Office, for appellees.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MCCORMACK, J.

## BACKGROUND

This case presents an action originally brought by Paul D. Stewart and Beverly A. Stewart to establish a holdover tenancy under the terms and conditions of an expired lease agreement with the landowner, Darlene A. Bennett, trustee of the Darlene A. Bennett Revocable Trust. Bennett denied the existence of a holdover tenancy and asserted that any rule of law establishing a holdover tenancy in this case would be an unconstitutional taking of property without due process. Bennett counterclaimed for liquidated damages as specified in the lease for failure to relinquish possession.

The district court found that under the undisputed facts presented, no holdover tenancy was created. Accordingly, the district court granted Bennett's motion for summary judgment and dismissed the Stewarts' petition against Bennett. The Stewarts do not appeal the determination that there was no creation of a holdover tenancy, and that issue is not before us in this appeal.

Both parties originally sought attorney fees under paragraph 26 of the lease, which stated that if either party files suit to enforce the terms of the lease, the prevailing party shall be entitled to recover court costs and reasonable attorney fees. After the district court dismissed the Stewarts' petition, but before ruling on Bennett's counterclaim, the Stewarts challenged the validity of the attorney fee provision. Bennett responded that the Stewarts

were barred from asserting that the attorney fee provision was against public policy, since they were the first party to ask for attorney fees under the provision. Bennett also alleged that any jurisprudence determining such provision to be against public policy was unconstitutional.

Citing *Parkert v. Lindquist*, 269 Neb. 394, 693 N.W.2d 529 (2005), and the cases discussed therein, the district court denied attorney fees. The court overruled Bennett's constitutional challenge to holdover tenancy law, explaining that because it determined that there was no holdover tenancy, the issue was moot. The court did not specifically address Bennett's argument that the rule recognized in *Parkert* was unconstitutional. Bennett appeals.

## ASSIGNMENTS OF ERROR

Bennett asserts that the district court erred in (1) finding that Bennett was not entitled to attorney fees under paragraph 26 of the lease agreement, (2) failing to rule that the judicially created public policy against awarding attorney fees provided for in a contractual provision violates the separation of powers clause of the Nebraska Constitution, and (3) failing to rule that the judicially created notice requirement to terminate farm tenancies violates the separation of powers clause of the Nebraska Constitution.

## STANDARD OF REVIEW

This case presents questions of law, upon which the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision by the trial court. See *Stewart v. Advanced Gaming Tech.*, 272 Neb. 471, 723 N.W.2d 65 (2006).

## ANALYSIS

The sole issue in this appeal is whether the district court erred in failing to grant attorney fees to Bennett. Bennett asks us to revisit our previously established rule that a contractual provision for attorney fees, where such fees are not provided by statute or uniform course of procedure, is against public policy and will not be judicially enforced. See *Parkert v. Lindquist, supra*. Alternatively, Bennett asserts that some form of equitable defenses, i.e., the doctrines of unclean hands, waiver, and estoppel, should operate to preclude recognition of the voidness of the fee provision in this case. She reasons that the Stewarts were the

first to request fees in their unsuccessful petition against Bennett and because the Stewarts had signed the lease with the fee provision. Finally, Bennett seeks a declaration that our case law on holdover tenancies is unconstitutional. Although no such tenancy was found in this case, Bennett asserts that the issue should be addressed under an exception to the mootness doctrine.

We decline to overrule the line of cases which clearly hold that the attorney fee provision at issue in this case is invalid. Because it is uncontested that no holdover tenancy was created, we will not address Bennett's attacks on the constitutionality of holdover tenancy jurisprudence.

### Doctrines of Unclean Hands, Waiver, and Estoppel

Bennett first asserts various equitable defenses which Bennett argues preclude the Stewarts from benefiting from any public policy invalidation of the attorney fee provision. Bennett is unable to cite any case law directly applicable to this point. Rather, Bennett relies on generalized references to the doctrines of unclean hands, waiver, and estoppel to argue that because the Stewarts signed the lease agreement with the attorney fee provision and also because they requested such fees in their original petition, they could not later assert that the attorney fee provision was void as against public policy.

The doctrines of unclean hands, waiver, and estoppel clearly do not apply to the Stewarts' claim that the attorney fee provision is invalid. First, it is axiomatic that a party cannot waive the invalidity of a contractual provision by entering into a contract containing such a provision. As to the idea that by asking the court for fees under the provision, equity precludes the Stewarts from later denying the validity of the provision, we first note that the underlying claim is an action at law in which some of these equitable defenses simply do not apply. See; *Mason v. City of Lincoln*, 266 Neb. 399, 665 N.W.2d 600 (2003); *Buckingham v. Wray*, 219 Neb. 807, 366 N.W.2d 753 (1985). In any case, there is no evidence that the Stewarts acted inequitably, unfairly, or dishonestly in their initial claim for attorney fees. See, e.g., *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002). There is not any evidence that the Stewarts gained any benefit from their unsuccessful claim under

the attorney fee provision or that Bennett detrimentally relied on the Stewarts' prior claim.

■ Closer to the point is Bennett's assertion of the doctrine of judicial estoppel, which holds that one who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding. *Vowers & Sons, Inc. v. Strasheim*, 254 Neb. 506, 576 N.W.2d 817 (1998). The doctrine protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding. *Id.*

■ However, the doctrine of judicial estoppel does not apply in this case because the district court never accepted the claim that the attorney fee provision was applicable. "'Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent results exists.'" *Vowers & Sons, Inc. v. Strasheim*, 254 Neb. at 514, 576 N.W.2d at 824.

■ This court has said that a party will be bound by allegations in the pleadings and cannot subsequently take a position inconsistent thereto, as such allegations are judicial admissions. See, *Jorgensen v. State Nat. Bank & Trust*, 255 Neb. 241, 583 N.W.2d 331 (1998); *Ryder Truck Rental v. Transportation Equip. Co.*, 215 Neb. 458, 339 N.W.2d 283 (1983). But we have clarified that a party cannot judicially admit conclusions of law in the pleadings because the pleadings admit only facts. See *Jorgensen, supra*. The Stewarts' implicit allegation that the attorney fee provision was valid was a conclusion of law.

## "AMERICAN RULE"

Having concluded that the Stewarts are not estopped from asserting that the attorney fee provision at issue is invalid as against public policy, we next address Bennett's argument that we should overrule our cases on this point. Bennett argues that our determination that attorney fee provisions violate public policy in the absence of a uniform course of procedure or statutory authorization is representative of a minority view of what exceptions apply to the so-called American rule, and he urges us to reconsider. Bennett also asserts that our failure to except privately contracted fee provisions is a judicial declaration of public policy that

encroaches on the exclusive powers of the Legislature to make public policy determinations and that our American rule jurisprudence therefore violates separation of powers.

The "American rule" stands generally for the proposition that "a prevailing party may not also recover an attorney fee from his opponent." *Holt County Co-op Assn. v. Corkle's, Inc.*, 214 Neb. 762, 767, 336 N.W.2d 312, 315 (1983). The justification for this general rule is that "a defendant should not be unduly influenced from vigorously contesting claims made against him." *Id.* See, also, 20 Am. Jur. 2d *Costs* § 55 (2005) (purpose of American rule requiring each party to bear own costs in litigation is to avoid stifling legitimate litigation by threat of specter of burdensome expenses being imposed on unsuccessful party).

There are exceptions to the American rule, and these exceptions vary from state to state. All states create an exception to the general rule in cases where the legislature has expressly allocated those fees to the winning party. Most jurisdictions, including Nebraska, also have an exception to the American rule where attorney fees are granted pursuant to the court's inherent authority to do all things necessary for the proper administration of justice and equity within the scope of their jurisdiction. See, *Holt County Co-op Assn., supra*; *Mangiante v. Niemiec*, 98 Conn. App. 567, 910 A.2d 235 (2006).

■ Many jurisdictions have also created an exception where the attorney fees are provided for through contractual agreement. This court, however, has repeatedly held that in the absence of a uniform course of procedure or authorization by statute, contractual agreements for attorney fees are against public policy and will not be judicially enforced. See, *Parkert v. Lindquist*, 269 Neb. 394, 693 N.W.2d 529 (2005); *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001); *GFH Financial Serv. Corp. v. Kirk*, 231 Neb. 557, 437 N.W.2d 453 (1989); *First Nat. Bank v. Schroeder*, 218 Neb. 397, 355 N.W.2d 780 (1984); *Quinn v. Godfather's Investments*, 217 Neb. 441, 348 N.W.2d 893 (1984); *City of Gering v. Smith Co.*, 215 Neb. 174, 337 N.W.2d 747 (1983).

■ Public policy is that principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good. Public policy presents the

principles under which the freedom of contract or private dealings are restricted by law for the good of the community. See *Hood v. AAA Motor Club Ins. Assn.*, 259 Neb. 63, 607 N.W.2d 814 (2000).

 It is the Legislature's function through the enactment of statutes to declare what is the law and public policy. *Myers v. Nebraska Invest. Council*, 272 Neb. 669, 724 N.W.2d 776 (2006). Neb. Rev. Stat. § 25-824 (Reissue 1995) provides for attorney fees to the prevailing party when the court determines that the underlying action was brought in bad faith. The Legislature, in enacting this statute, was presumably aware of our understanding of the American rule and the exceptions to that rule in our state. See, *In re Guardianship of Rebecca B. et al.*, 260 Neb. 922, 621 N.W.2d 289 (2000); *State v. Schnabel*, 260 Neb. 618, 618 N.W.2d 699 (2000). The Legislature is presumed to know the general condition surrounding the subject matter of the legislative enactment, and it is presumed to know and contemplate the legal effect that accompanies the language it employs to make effective the legislation. *Ludwig v. Board of County Commissioners*, 170 Neb. 600, 103 N.W.2d 838 (1960). By implication, in § 25-824, the Legislature has made a statement of public policy against granting attorney fees in actions that are not frivolous.

Having found that the public policy relevant to this case was embodied by an expression of the Legislature, we can find no merit to Bennett's argument that our case law recognizing this public policy violated the alleged exclusive realm of the Legislature to determine public policy questions. We decline to reconsider our case law on this issue.

### CONVERSION TO YEAR-TO-YEAR TENANCY

In Bennett's third assignment of error, Bennett complains that the district court did not rule on the constitutionality of case law establishing the circumstances in which a holdover tenancy can be established by the conduct of the parties after expiration of the terms of a lease. See, e.g., *Stuthman v. Stuthman*, 245 Neb. 846, 515 N.W.2d 781 (1994); *Otto v. Hongsermeier Farms*, 217 Neb. 45, 348 N.W.2d 422 (1984). The district court did not reach this issue because it determined that no holdover tenancy had been established under the facts presented in this case. Finding no error

in this determination, we need not address the last assignment of error.

## CONCLUSION
We affirm the judgment of the district court.

AFFIRMED.