Troy L. BOSWELL p/k/a Leroy Troy

v.

**RFD–TV THE THEATER, LLC, et al.**

Court of Appeals of Tennessee,
AT NASHVILLE.

February 17, 2016 Session

Filed March 18, 2016

Application for Permission to Appeal
Denied by Supreme Court
August 18, 2016

W. Scott Sims and David Gilbert Schuette, Nashville, Tennessee, for the appellant, RFD–TV The Theater, LLC.

Bruce H. Phillips and Sarah Kathryn Gritton, Brentwood, Tennessee, for the appellee, Troy L. Boswell.

## OPINION

Brandon O. Gibson, J., delivered the opinion of the court, in which Frank G. Clement, Jr., P.J., M.S. and W. Neal McBrayer, J., joined.

This appeal arises out of a breach of contract action filed by a musical performer after the defendant venue owner cancelled the show in which the plaintiff performed. The trial court found in favor of the plaintiff performer and ordered the

defendant to pay $70,744 in damages for breach of contract, $59,864.18 in prejudgment interest, and $90,000 in attorney's fees. The defendant appeals, arguing that the awards of prejudgment interest and attorney's fees were erroneous according to Nebraska law, which the parties chose to govern their contract. For the following reasons, we reverse and remand for further proceedings.

## I. FACTS & PROCEDURAL HISTORY

Plaintiff Troy L. Boswell is a musical performer and a resident of Goodlettsville, Tennessee. He is professionally known as "Leroy Troy." Defendant RFD–TV The Theater, LLC (the "Theater") owns and operates a musical venue in Branson, Missouri. On February 5, 2007, the Theater entered into an entertainment services agreement (the "Contract") with Boswell. Pursuant to the Contract, the Theater agreed to purchase from Boswell "[m]usical performances for the 2007 season," with a starting date of March 1, 2007, and an ending date of October 31, 2007. The Contract listed 21 dates during that period when Boswell would be unavailable, due to previous bookings, and the parties agreed that a pro-rata amount of $715 per day would be deducted from Boswell's weekly fee for those absences. The Contract provided that Boswell's shows would last no more than 45 minutes, and he would perform no more than ten shows per week. However, the specific show dates and times were "[t]o be determined and mutually agreed upon by both parties."

The Contract provided that from March 1 until the opening date of the venue, the Theater would pay Boswell $2,500 per week for rehearsals. Once the venue opened to the public, the Theater would pay Boswell $5,000 per week for the ser-

vices provided. The Theater agreed to pay a $5,000 deposit to Boswell upon execution of the agreement, which would be applied to the payment for the final week of the contract term. The Contract also contained the following provisions:

BREACH OF CONTRACT. In the event of any action, suit or proceeding arising from or based on this agreement brought by either party hereto against the other, the prevailing party shall be entitled to recover from the other its reasonable attorney's fees in connection therewith in addition to the costs of that action, suit or proceeding.

GOVERNING LAW. This Agreement shall be governed by and construed in accordance with the laws of the State of Nebraska.[1]

The parties agree that the Theater paid Boswell the $5,000 deposit as an advance payment for his final week of performances, and it also paid him $2,500 per week for rehearsals from March 1 until March 29, 2007, when the Theater opened to the public. Thereafter, Boswell performed a total of 60 shows at the Theater from its public opening on March 29 through June 28, 2007. The Theater paid Boswell $5,000 per week during that time. However, on July 1, 2007, the president of the Theater called a meeting with all staff and crew and announced that the show was cancelled.

On July 9, 2007, Boswell's attorney sent a letter to the Theater advising it that Boswell was ready, willing, and able to perform pursuant to the parties' Contract. The letter suggested that the Theater was "in material breach" of the Contract by terminating Boswell's weekly payments of $5,000 and indicating that it would no longer honor the Contract. The letter stated

1. The Theater is a Delaware limited liability company with its principal place of business in Missouri and its corporate headquarters in Omaha, Nebraska.

that Boswell was making every effort to mitigate his damages, but due to such late notice, he had not been successful in his efforts. Boswell claimed that he was entitled to $5,000 for the previous week's missed payment and "approximately $80,000 in additional compensation." He requested that the Theater contact his attorney "to work out payment of damages," but the Theater never responded to the letter or made payment to Boswell as requested in the letter.

On October 11, 2007, Boswell filed this lawsuit in Davidson County Circuit Court. He named as defendants the Theater and other separate but related entities. The complaint sought recovery based on breach of contract and/or promissory estoppel. The complaint alleged that the term of the Contract was from March 1, 2007, until October 31, 2007, and therefore, the Theater breached the Contract by cancelling the show on July 1, 2007, and discontinuing payments to Boswell. Boswell alleged that he was ready, willing, and able to perform under the Contract but was not allowed to do so. He sought damages for breach of contract in the amount of $82,140. Specifically, he sought $5,000 for each of the remaining weeks of the contract (equaling $90,000), minus the $5,000 deposit already paid, minus the pro rata fee of $715 for four days he would have missed during the remainder of the contract term, totaling $2,860. He also sought an award of prejudgment interest and an award of attorney's fees as provided in the parties' Contract.

The case remained pending for several years.[2] Throughout the proceedings, the parties agreed that Nebraska law applied

to the substantive issues in the case, while Tennessee law governed procedural issues. The parties stipulated that the Theater had already paid Boswell a total of $77,500 pursuant to the Contract. However, the Theater asserted that it had no further obligation to pay Boswell after it cancelled the show on July 1, 2007, because the Contract provided that show dates and times were "[t]o be determined and mutually agreed upon by both parties." The Theater claimed that this constituted an unenforceable "agreement to agree."

The trial court held a bench trial from November 17 to November 19, 2014. On March 4, 2015, the court entered a final order entering a judgment in favor of Boswell. The trial court found the contract enforceable, valid, and unambiguous. The court concluded that the Contract was for a specific term—from March 1 through October 31, 2007. The court concluded that Boswell was obligated to be available to perform during that time, with specific dates and times to be determined on an ongoing basis, and it found that his payment was not conditioned on the number of his performances. The court found that the Theater materially breached the Contract by cancelling the show on July 1, 2007, due to no fault of Boswell, and by failing to pay him the weekly sum due under the Contract.

The trial court looked to the Contract to calculate Boswell's damages. It found that he was entitled to be paid $2,500 per week for the four-week period between March 1 and the opening of the Theater on March 30, 2007, for a total of $10,000, in addition to $5,000 per week for the remaining thir-

---

**2.** During that time, the trial court entered an agreed order granting the Theater's motion for partial summary judgment on the issue of promissory estoppel. Although the order did not specify the reasons for dismissal of this claim, the motion was based on Nebraska caselaw providing that "[w]hen an unambiguous contract exists that covers the issue for which damages are sought, promissory estoppel is not a viable theory of recovery." *Folgers Architects Ltd. v. Kerns*, 262 Neb. 530, 633 N.W.2d 114, 121 (2001).

ty-one weeks of the Contract term, for a total of $155,000. In sum, he was to be paid $165,000 during the term of the Contract. As noted above, the Theater paid Boswell $77,500 prior to cancellation of the show. The trial court found that the Theater was entitled to deduct from the amount owed the pro rata allowance for the 21 dates specified in the Contract for previously booked performances, at the rate of $715 per day, for a total deduction of $15,015. Finally, the trial court found that Boswell had a duty to mitigate his damages and did so by making reasonable attempts to find other work. The trial court found that he earned $1,741 from performances and merchandise sales, which the trial court deducted from the amount owed by the Theater. In sum, the trial court calculated Boswell's damages for breach of contract at $70,744.

The trial court granted Plaintiff's request for prejudgment interest pursuant to Nebraska Revised Statutes section 45–104. Applying the statutory rate of 12%, and calculating the amount owed from October 31, 2007, through November 19, 2014, the trial court awarded Boswell $59,864.18 in prejudgment interest.

The trial court also awarded Boswell $90,000 in attorney's fees pursuant to the attorney's fee provision in the parties' Contract. The trial court acknowledged the parties' choice of law provision specifying that the law of Nebraska would apply to the Contract. Under Nebraska law, "[i]n the absence of a uniform course of procedure or authorization by statute, contractual agreements for attorney fees are against public policy and will not be judicially enforced." *Stewart v. Bennett*, 273 Neb. 17, 727 N.W.2d 424, 426 (2007). However, the trial court predicted that a Tennessee appellate court would hold that attorney's fees are a matter of procedural law. Because the law of the forum state

governs procedural issues, the trial court applied Tennessee law and found the parties' contractual attorney's fee provision enforceable.

The Theater timely filed a notice of appeal to this Court and now challenges the trial court's awards of prejudgment interest and attorney's fees under Nebraska law.

## II. Issues Presented

The Theater presents the following issues for review on appeal:

1. Whether the trial court erred in awarding prejudgment interest to Plaintiff under applicable Nebraska law; and

2. Whether the trial court erred in awarding attorney's fees to Plaintiff under applicable Nebraska law.

For the following reasons, we reverse and remand for further proceedings.

## III. Discussion

 When deciding which state's law to apply to a particular dispute, courts undertake a choice of law analysis using the rules applicable in the forum state. *Williams v. Smith*, 465 S.W.3d 150, 153 (Tenn.Ct.App.2014); *Gov't Emps. Ins. Co. v. Bloodworth*, No. M2003–02986–COA–R10–CV, 2007 WL 1966022, at *26 (Tenn. Ct.App. June 29, 2007). As a general rule, the first step is to decide whether a conflict actually exists between the relevant laws of the different jurisdictions. *Shelby Cnty. Health Care Corp. v. Baumgartner*, No. W2008–01771–COA–R3–CV, 2011 WL 303249, at *13 (Tenn.Ct.App. Jan. 26, 2011); *Bloodworth*, 2007 WL 1966022, at *29; *see also Wayland v. Peters*, No. 03A01–9705–CV–00172, 1997 WL 776338, at *1 (Tenn.Ct.App. Dec. 17, 1997) (characterizing this as a "preliminary issue").

 A conflict clearly exists in the case at bar. In the context of contract inter-

pretation, Tennessee allows an exception to the American rule, which would otherwise prohibit an award of attorney's fees, when a contract specifically or expressly provides for the recovery of attorney's fees. *Cracker Barrel Old Country Store, Inc. v. Epperson,* 284 S.W.3d 303, 309 (Tenn.2009); *see also Taylor v. Fezell,* 158 S.W.3d 352, 359 (Tenn.2005) ("litigants must pay their own attorney's fees unless there is a statute or contractual provision providing otherwise"). To the contrary, the Nebraska Supreme Court "has repeatedly held that in the absence of a uniform course of procedure or authorization by statute, contractual agreements for attorney fees are against public policy and will not be judicially enforced." *Stewart,* 727 N.W.2d at 429. Because an actual conflict exists between Tennessee law and Nebraska law, we will proceed with the choice of law analysis.

■ "Tennessee will honor a choice of law clause if the state whose law is chosen bears a reasonable relation to the transaction and absent a violation of the forum state's public policy." *Bourland, Heflin, Alvarez, Minor & Matthews, PLC v. Heaton,* 393 S.W.3d 671, 674 (Tenn.Ct.App. 2012) (citing *Wright v. Rains,* 106 S.W.3d 678, 681 (Tenn.Ct.App.2003)). Here, the parties chose the law of Nebraska, where the Theater is headquartered, to govern the Contract, and both parties agree that the choice of law clause is valid and enforceable.

■ Despite the parties' choice of law, however, Tennessee law governs matters of procedure under our conflict of law principles. *In re Healthways, Inc. Derivative Litig.,* No. M2009–02623–COA–R3–CV, 2011 WL 882448, at *3 (Tenn.Ct.App. Mar. 14, 2011); *Rampy v. ICI Acrylics, Inc.,* 898 S.W.2d 196, 198 n. 2 (Tenn.Ct.App. 1994). Matters of procedure are governed by the law of the forum. *State ex rel.*

*Smith v. Early,* 934 S.W.2d 655, 658 (Tenn. Ct.App.1996). In other words, we apply our own procedural rules even if the law of another state governs the substantive issues. *See, e.g., Beach Cmty. Bank v. Labry,* No. W2011–01583–COA–R3–CV, 2012 WL 2196174, at *3 n. 6 (Tenn.Ct.App. June 15, 2012); *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.,* 972 S.W.2d 1, 5 (Tenn.Ct.App.1998). The rationale for this distinction is aptly stated in the *Restatement (Second) of Conflict of Laws* § 122, cmt. a (1971) as follows:

> Each state has local law rules prescribing the procedure by which controversies are brought into its courts and by which the trial of these controversies is conducted. These rules for conducting lawsuits and administering the courts' processes vary from state to state. The forum has compelling reasons for applying its own rules to decide such issues even if the case has foreign contacts and even if many issues in the case will be decided by reference to the local law of another state. The forum is more concerned with how its judicial machinery functions and how its court processes are administered than is any other state. Also, in matters of judicial administration, it would often be disruptive or difficult for the forum to apply the local law rules of another state.

"Enormous burdens are avoided when a court applies its own rules, rather than the rules of another state, to issues relating to judicial administration, such as the proper form of action, service of process, pleading, rules of discovery, mode of trial and execution and costs." *Id.* However, the line is not always clear regarding which matters are substantive and which are procedural.

■ In Tennessee, substantive law has been described as " 'that part of the law which creates, defines, and regulates rights; that which creates duties, rights,

and obligations; the law which relates to rights and duties which give rise to a cause of action.'" *Solomon v. FloWarr Mgmt., Inc.*, 777 S.W.2d 701, 705 (Tenn.Ct.App. 1989) (quoting *Spencer Kellogg & Sons, Inc. v. Lobban*, 204 Tenn. 79, 315 S.W.2d 514, 518 (1958)). We also consider whether the law is "substantive in effect" even if it would initially appear to be "procedural in form." *Gordon's Transports, Inc. v. Bailey*, 41 Tenn.App. 365, 294 S.W.2d 313, 324 (1956). Where a rule from another state

> is such that it goes to the very existence of the contract or the right of the plaintiff to recover, or of the defendant to resist recovery, whether that rule is to be denominated as one of remedy or of substance, the fact is that it affects the substantive rights of the parties and should therefore be applied, notwithstanding a contrary rule of the forum.

*Id.* (citing 11 Am. Jur. pages 523–24, Conflict of Laws, Sec. 203).

### A. Attorney's Fees

■ The first issue we address on appeal is whether the trial court erred in awarding Boswell attorney's fees on the basis that the issue is procedural and governed by Tennessee law.

■ Our standard of review on appeal is a procedural matter governed by Tennessee law. *In re Healthways, Inc. Derivative Litig.*, 2011 WL 882448, at *3; *Charles Hampton's A–1 Signs, Inc. v. Am. States Ins. Co.*, 225 S.W.3d 482, 487 (Tenn. Ct.App.2006). In Tennessee, an appellate court reviews a trial court's conclusions on questions of law de novo with no presumption of correctness. *Friedmann v. Marshall Cnty., Tenn.*, 471 S.W.3d 427, 432 (Tenn.Ct.App.2015) (citing *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.2000)).

The material facts with respect to the issue of attorney's fees are not in dispute. Accordingly, we review *de novo* the trial court's decision regarding which state's law applies to the issue of attorney's fees. *See Lemons v. Cloer*, 206 S.W.3d 60, 64 (Tenn.Ct.App.2006) (reviewing a trial court's choice of law decision de novo).

Tennessee appellate courts have not explicitly addressed whether attorney's fees are a substantive or procedural matter for purposes of conflicts of law. This Court considered the issue on one occasion but found it unnecessary to resolve under the particular circumstances of the case before us. *See McRedmond v. Estate of Marianelli*, No. M2004–01496–COA–R3–CV, 2006 WL 2805158, at *20 (Tenn.Ct.App. Sept. 29, 2006) *overruled by House v. Estate of Edmondson*, 245 S.W.3d 372 (Tenn. 2008) ("we find it unnecessary to address the question of whether an award of attorney's fees is governed by procedural or substantive law"). In another case, we interpreted a contract according to Texas law but then cited Tennessee law when it came to the issue of attorney's fees. *See Cagle v. Hybner*, No. M2006–02073–COA–R3–CV, 2008 WL 2649643, at *21 (Tenn. Ct.App. July 3, 2008). However, we did not discuss whether attorney's fees are a substantive or procedural matter, or otherwise explain why we cited Tennessee law rather than Texas law, probably because the opposing party conceded that the prevailing party was entitled to recover his attorney's fees. *Id.* Accordingly, we find no guidance on this issue in the *Cagle* opinion.

■ Courts in several other jurisdictions have expressly considered whether awards of attorney's fees are governed by substantive or procedural law for purposes of conflicts of law.[3] However, those decisions have produced mixed results. Some

---

**3.** We limit our discussion to cases deciding the issue in the choice-of-law context. Many

courts have held that issues involving attorney's fees are procedural and governed by the law of the forum. *See, e.g., Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 974 (9th Cir.2013) (predicting that the Alaska Supreme Court would hold, for choice of law purposes, that its attorney's fee rule is procedural); *Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So.2d 954, 960 (Miss.1999) ("In Mississippi, the law of the forum applies to all procedural and remedial issues. That includes attorneys' fees[.]") (citation omitted); *Neb. Nutrients, Inc. v. Shepherd*, 261 Neb. 723,626 N.W.2d 472, 518 (2001) ("Nebraska law deems the recovery of attorney fees in the action in which they are incurred to be a procedural issue governed by the law of the forum"); [4] *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 158 N.J. 561, 730 A.2d 843, 848 (1999) ("attorneys' fees are a matter of practice and procedure, rather than of substantive law"); *GB Auctions, Inc. v. Private Ledger, Inc.*, 183 Wash.App. 1028, 2014 WL 4627773, at *5 (Sept. 16, 2014) (finding contractual attorney's fees to be a procedural issue governed by the law of the forum); *Smithco Eng'g, Inc. v. Int'l Fabricators, Inc.*, 775 P.2d 1011, 1017 n. 4, 1019 (Wyo.1989) (finding a statute that authorized awards of attorney's fees to a prevailing party, "to be taxed and collected as costs," was procedural).

Other courts have held that attorney's fees are substantive issues. *See, e.g., PVI,*

---

courts have addressed whether attorney's fees are a matter of substantive or procedural law for other purposes, such as arbitration proceedings, retroactivity issues, and situations where federal courts apply substantive state law. However, "[t]he line between 'substance' and 'procedure' shifts as the legal context changes." *Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). The Restatement comment cautions against "unthinking adherence to precedents that have classified a given issue as 'procedural' or 'substantive', regardless of what purposes were involved in the earlier classifications." *Restatement (Second) of Conflict of Laws* § 122, cmt. b (1971). It warns that a decision classifying a matter as "procedural" for one purpose might mistakenly be held controlling on the question of whether the same matter is "procedural" for choice-of-law purposes. *Id.*

"To avoid encouraging errors of that sort," the Restatement does not attempt to classify issues as "procedural" or "substantive," but rather, to "face directly the question whether the forum's rule should be applied." *Id.* Its comments suggest consideration of four factors that may influence a court to apply the law of the forum. *Id.* at cmt. a. Tennessee courts have not adopted those factors, but we have nonetheless considered them and concluded that they would not alter our decision in this case.

4. To be clear, when we apply the substantive law of another state, we do not also apply the other state's choice of law principles. Nebraska's view regarding whether attorney's fees are substantive or procedural does not control our analysis of the issue. *See, e.g., Williams*, 465 S.W.3d at 156 (explaining that North Carolina's choice of law statute did not impact this Court's analysis under Tennessee choice of law principles); *Lemons*, 206 S.W.3d at 67 ("The conflict of laws rule to which Georgia prescribes is not material in this case."). As noted above, courts undertake a choice of law analysis using the rules applicable in the forum court's state. *Williams*, 465 S.W.3d at 153; *Bloodworth*, 2007 WL 1966022, at *26; *see also Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1125 (10th Cir.1999) ("[A]lthough a state is free to consult the choice-of-law determinations of another state in deciding whether its own statute is substantive or procedural, state courts are not compelled to do so. Rather, the forum's law controls the substantive/procedural determination[.]") (citation omitted); *PennWell Corp. v. Ken Assocs., Inc.*, 123 S.W.3d 756, 764 (Tex.Ct.App.2003) ("Generally, what is a matter of substance and what is a matter of procedure is determined by the law of the forum state according to its own laws.") As a result, Tennessee courts apply Tennessee's choice of law principles. *Lemons*, 206 S.W.3d at 68.

*Inc. v. Ratiopharm GmbH,* 253 F.3d 320, 329 (8th Cir.2001) (explaining that Missouri law regards a contractual right to attorney's fees as a substantive right created by the contract and governed by the substantive law applicable to the contract generally); *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency,* 174 F.3d 1115, 1125 (10th Cir.1999) (predicting under Oklahoma choice-of-law principles that attorney's fees would be considered a substantive issue in a contractual dispute); *Aries v. Palmer Johnson, Inc.,* 153 Ariz. 250, 735 P.2d 1373, 1381 (Ariz.Ct.App.1987) (holding that the recovery of contractual attorney's fees as authorized by statute was a substantive issue); *Seattle–First Nat'l Bank v. Schriber,* 51 Or.App. 441, 625 P.2d 1370, 1373 (1981) (concluding that a statute authorizing contractual attorney's fee awards involved a matter of substantive right).

Some courts recognize a distinction between different types of claims for attorney's fees, such as those awarded to a party for prevailing on its claim versus those assessed against a party as sanctions for bad faith litigation practices. *See, e.g., Boyd Rosene & Assocs., Inc.,* 174 F.3d at 1125–26 (noting the distinction and finding the latter category more related to judicial administration). For instance, Florida courts treat contractual awards of attorney's fees as substantive and bad faith awards of attorney's fees as procedural. *Compare Precision Tune Auto Care, Inc. v. Radcliffe,* 815 So.2d 708, 711 (Fla.Ct. App.2002) (applying the contractually chosen substantive law of Virginia to an award of attorney's fees based on a contract); *with Weatherby Assocs., Inc. v. Ballack,* 783 So.2d 1138, 1143 (Fla.Ct.App.2001) (finding a contract's choice of law clause irrelevant to an award of attorney's fees not made pursuant to the contract but pursuant to a Florida statute regarding frivolous litigation). Texas courts have

held that the recovery of attorney's fees for breach of contract is a substantive issue, while a discretionary attorney's fee award under the state's Declaratory Judgment Act is procedural. *Man Indus. (India), Ltd. v. Midcontinent Exp. Pipeline, LLC,* 407 S.W.3d 342, 353–54 (Tex.Ct.App. 2013). Idaho courts hold that "a statute providing for the discretionary award of attorney fees is remedial and procedural and does not affect the substantive claim for relief, while a statute providing for a mandatory award of attorney fees to the prevailing party is substantive[.]" *Houston v. Whittier,* 216 P.3d 1272, 1283 (Id. 2009). As these cases and various approaches demonstrate, "this is by no means an obvious or settled issue." *Boyd Rosene & Assocs., Inc.,* 174 F.3d at 1125; *see Ancile Inv. Co. v. Archer Daniels Midland Co.,* 992 F.Supp.2d 316, 319 (S.D.N.Y. 2014) (noting direct conflict between decisions in the circuit predicting whether New York would classify attorney's fees as substantive or procedural).

Considering these various approaches, we emphasize that the precise issue presented in this case is narrow—is a claim for attorney's fees *pursuant to a contract* a substantive issue governed by a choice of law provision in that contract, or is such a claim governed by the procedural law of the forum? It is not necessary for purposes of this appeal to broadly classify all types of claims for attorney's fees, and we do not purport to do so.

■■■■■■ The Texas Court of Appeals has reasoned that a contractual claim for attorney's fees is "part of [the] substantive claim for breach of contract." *Midwest Med. Supply Co. v. Wingert,* 317 S.W.3d 530, 537 (Tex.Ct.App.2010). The court found the issue of attorney's fees " 'inextricably intertwined with the substantive issue of contractual liability—an issue that is

undisputably governed by the choice-of-law provision.'" *Id.* (quoting *Fairmont Supply Co. v. Hooks Indus., Inc.,* 177 S.W.3d 529, 535–36 (Tex.Ct.App.2005)). Accordingly, the Texas court viewed the attorney's fee claim as a substantive contractual issue governed by the law chosen by the parties. *Id.* In reaching the same conclusion, the Oregon Court of Appeals considered that attorney's fees based on a contract must be pled and proved and "are not merely costs incidental to judicial administration," therefore, awarding them is a matter of substantive right. *Schriber,* 625 P.2d at 1373. In contrast, the Nebraska Supreme Court considers attorney's fees to be elements of court costs that affect only the remedy, rather than damages. *Neb. Nutrients,* 626 N.W.2d at 518. The Nebraska Court considers an attorney's fee provision to be "a stipulation for costs" that "is not a substantive part of the contract itself and cannot be enforced in another jurisdiction." *Id.* (quotation omitted).

Tennessee's view of contractual attorney's fees is more in line with the courts of Texas and Oregon. "In Tennessee, attorney's fees are not part of costs." *Barrett v. Town of Nolensville,* No. M2010–01173–COA–R3CV, 2011 WL 856923, at *2 (Tenn.Ct.App. Mar. 10, 2011); *see also Cracker Barrel Old Country Store, Inc.,* 284 S.W.3d at 310 ("The term 'costs' has not generally been construed to encompass attorney fees."). Furthermore, as noted above, Tennessee courts have described "substantive law" as " 'that part of the law which creates, defines, and regulates rights; that which creates duties, rights, and obligations; the law which relates to rights and duties which give rise to a cause of action.'" *Solomon,* 777 S.W.2d at 705 (quoting *Spencer Kellogg & Sons,*

*Inc.,* 315 S.W.2d at 518). Contracts providing for attorney's fees impose a contractual liability that one enforces as a matter of substantive right. Rules regarding the recovery of contractual attorney's fees define the parties' rights and obligations. Accordingly, we conclude that a state's rules regarding the recovery of contractual attorney's fees are substantive rules governing the substantive rights of the parties.[5]

In the case at bar, Boswell's claim for attorney's fees pursuant to the attorney's fee provision in the Contract is part and parcel of his substantive claim for breach of contract. Accordingly, it should be governed by the choice-of-law provision in that same Contract. The choice-of-law provision states that the Contract is to be governed by and construed in accordance with the laws of the State of Nebraska, and therefore, Nebraska law applies to the provision providing for the recovery of attorney's fees for breach of the Contract. We decline to apply Tennessee caselaw regarding contractual attorney's fee provisions to the parties' Contract otherwise governed by the substantive law of Nebraska.

Under the governing Nebraska law, "a contractual provision for attorney fees, where such fees are not provided by statute or uniform course of procedure, is against public policy and will not be judicially enforced." *Stewart,* 727 N.W.2d at 427–28. Consequently, the attorney's fee provision in the parties' Contract is unenforceable pursuant to Nebraska law.

On appeal, Boswell claims that even if the attorney's fee provision in his Contract is unenforceable as a matter of Nebraska law, a Nebraska court would nevertheless have inherent equitable authority to award

---

5. Our holding on this issue should not be construed as a broad holding regarding all types of claims for attorney's fees in Tennessee.

him attorney's fees, and therefore, this Court should affirm the trial court's award of attorney's fees on equitable grounds. We this argument unpersuasive. Boswell relies on the following passage from the Nebraska Supreme Court's decision in *Stewart*:

> The "American rule" stands generally for the proposition that "a prevailing party may not also recover an attorney fee from his opponent." The justification for this general rule is that "a defendant should not be unduly influenced from vigorously contesting claims made against him."
>
> There are exceptions to the American rule, and these exceptions vary from state to state. All states create an exception to the general rule in cases where the legislature has expressly allocated those fees to the winning party. Most jurisdictions, including Nebraska, also have an exception to the American rule where attorney fees are granted pursuant to the court's inherent authority to do all things necessary for the proper administration of justice and equity within the scope of their jurisdiction.
>
> Many jurisdictions have also created an exception where the attorney fees are provided for through contractual agreement. This court, however, has repeatedly held that in the absence of a uniform course of procedure or authorization by statute, contractual agreements for attorney fees are against public policy and will not be judicially enforced.

*Stewart*, 727 N.W.2d at 429 (citations omitted). However, the equitable exception to which the Court referred has not been interpreted by Nebraska courts as broadly as Boswell suggests.

■■■ The Nebraska Supreme Court has characterized its equitable exception for awarding attorney's fees as an "exception relating to vexatious, unfounded, and dilatory conduct by counsel, amounting to bad faith." *Quinn v. Godfather's Investments, Inc.*, 217 Neb. 441, 348 N.W.2d 893, 895 (1984). The equitable exception only applies "in limited instances." *City of Gering v. Smith Co.*, 215 Neb. 174, 337 N.W.2d 747, 751 (1983). In *City of Gering*, the Court refused to extend the exception further, even though the contract at issue provided for the recovery of attorney's fees, reiterating that "such contracts are contrary to public policy and therefore invalid." *Id.* The Nebraska Supreme Court has also recognized that reasonable attorney's fees can be awarded in a contempt proceeding, with the following pertinent explanation:

> Attorney fees in contempt cases fall under a court's inherent power to do all things necessary to enforce its judgment. But outside of enforcing orders and judgments, we have extended a court's inherent power to award attorney fees only in a narrow circumstance: when a party's conduct during the course of litigation is so vexatious, unfounded, and dilatory that it amounts to bad faith. And we have specifically declined to extend that exception further.

*Wetovick v. Cnty. of Nance*, 279 Neb. 773, 782 N.W.2d 298, 318 (2010). The equitable exception recognized by Nebraska courts simply does not allow a court to enforce an otherwise unenforceable contractual provision for attorney's fees simply on the basis of equity. *See Lamb Eng'g & Constr. Co. v. Nebraska Pub. Power Dist.*, 103 F.3d 1422, 1434 (8th Cir.1997) (describing the equitable exception under Nebraska law as being limited to cases involving bad faith during the course of the litigation, not pre-litigation conduct).

In sum, we conclude that the choice-of-law provision in the parties' Contract de-

termines the law applicable to the attorney's fee provision in the Contract. Thus, Nebraska law governs the issue. Under Nebraska law, Boswell is not entitled to recover his attorney's fees in connection with his claim for breach of contract. We reverse the trial court's ruling to the contrary and vacate its award of attorney's fees.

### B. Prejudgment Interest

Before the trial court, Boswell sought an award of prejudgment interest pursuant to Nebraska Revised Statutes sections 45–103 and/or 45–104. The Theater argued that Boswell was not entitled to prejudgment interest pursuant to the terms of the Nebraska statutes because, according to the Theater, the claim was subject to reasonable controversy. The Theater cited Nebraska law in support of its arguments. The trial court awarded prejudgment interest to Boswell in accordance with Nebraska Revised Statutes section 45–104 at twelve percent per annum, simple interest, from October 31, 2007, through November 19, 2014, which totaled $59,864.18.

On appeal, neither party raises an issue regarding the trial court's decision to apply Nebraska law to the issue of prejudgment interest. Neither party argues that Tennessee law should have governed the issue. As a result, we will not review the correctness of the trial court's decision as to the applicable law. We limit our review to the issue raised on appeal regarding whether an award of prejudgment interest was appropriate pursuant to Nebraska law.[6]

According to Nebraska Revised Statutes section 45–103.02(2), except as otherwise provided, "interest as provided in section 45–104 shall accrue on the unpaid balance of liquidated claims from the date the cause of action arose until the entry of judgment." Section 45–104 then provides that, unless otherwise agreed, "interest shall be allowed at the rate of twelve percent per annum on money due on any instrument in writing[.]" Neb.Rev. Stat. Ann. § 45–104. Thus, in Nebraska,

> "The general rule is that prejudgment interest may be recovered on claims that are liquidated. A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion. *First Data Resources, Inc. v. Omaha Steaks Int., Inc.*, 209 Neb. 327, 307 N.W.2d 790 (1981). Where a reasonable controversy exists as to the plaintiff's right to recover or as to the amount of such recovery, the claim is generally considered to be unliquidated and prejudgment interest is not allowed. *Langel Chevrolet–Cadillac v. Midwest Bridge*, 213 Neb. 283, 329 N.W.2d 97 (1983)."

*Land Paving Co. v. D.A. Constr. Co.*, 215 Neb. 406, 338 N.W.2d 779, 780 (1983) (quoting *Classen v. Becton, Dickinson & Co.*, 214 Neb. 543, 334 N.W.2d 644, 645 (1983)). The Theater argues that a reasonable controversy existed regarding Boswell's right to recover and the amount of his recovery, and therefore, prejudgment interest was inappropriate.

First, the Theater claims that a reasonable controversy existed regarding its liability by pointing to the fact that the trial court proceedings lasted seven years and concluded in a bench trial. However, this does not necessarily demonstrate that a *reasonable* controversy existed. "The mere contesting of the amount of or right

---

6. We have simply confined our review to the issues presented on appeal. This decision should not be construed as a holding or implication that we consider the issue of prejudgment interest either substantive or procedural. We express no opinion in that regard.

to recovery does not alone create a reasonable controversy." *Lincoln Benefit Life Co. v. Edwards,* 243 F.3d 457, 462 (8th Cir.2001) (citing *A.G.A. Inc. v. First Nat'l Bank,* 239 Neb. 74, 474 N.W.2d 655, 658 (Neb.1991); *Wiebe Constr. Co. v. School Dist. of Millard,* 198 Neb. 730, 255 N.W.2d 413, 416–17 (Neb.1977)). Indeed, "where the issue is reasonably clear, even the most spirited opposition has not precluded recovery of pre-judgment interest." *Id.* at 463 (citing *A.G.A.,* 474 N.W.2d at 658).

The Theater admitted in its answer to the complaint that its president cancelled the show on July 1, 2007. The parties agree that Boswell subsequently sent a letter to the Theater indicating that he was ready, willing, and able to perform, but the Theater did not respond to the letter or pay Boswell. Before the trial court, the Theater's main arguments were that it was not subject to personal jurisdiction in Tennessee and that the parties' Contract was merely an unenforceable "agreement to agree," such that the Theater had no contractual liability to pay Boswell after it cancelled the show and Boswell no longer performed. The trial court rejected these arguments, finding the Contract unambiguous, valid, and enforceable. The Theater does not challenge the trial court's findings of fact or its conclusions of law regarding its liability for breach of contract. Despite the Theater's spirited opposition throughout these proceedings, we conclude that it failed to demonstrate that a reasonable controversy existed regarding Boswell's right to recover under the Contract.

■ However, this conclusion does not end the inquiry. Nebraska law also requires consideration of whether a reasonable controversy existed as to the amount of the plaintiff's recovery. The Theater argues that a reasonable controversy existed as to the amount of Boswell's recovery because Boswell's July 2007 letter estimated that he was owed "approximately" $85,000 for the remainder of the contract term, his complaint sought $82,140 in damages, and the trial court eventually awarded $70,744. The Theater relies on the Nebraska Supreme Court's decision in *Slusarski v. Am. Confinement Sys., Inc.,* 218 Neb. 576, 357 N.W.2d 450, 455 (1984), where the court affirmed the denial of prejudgment interest, simply stating, "the fact that the plaintiffs' claim for damages was in excess of $43,000, whereas the court found from the evidence that it amounted to but $28,000, would seem to establish that there was in fact a reasonable controversy on that score."

In Boswell's 2007 complaint, he asserted that he was entitled to recover $82,140 in damages for breach of contract. He calculated this sum as follows: $5,000 per week for each week remaining in the contract term after the show was cancelled; minus the $5,000 deposit he had received for the final week of the term; minus the deduction of $715 per day for four dates when he would have been unavailable for previously scheduled bookings during the remainder of the contract term. The complaint alleged that Boswell had made all necessary efforts to mitigate his damages, but his damage calculation did not include any deduction for mitigated damages. In its answer, the Theater asserted that Boswell had unreasonably failed to mitigate his damages. In December 2009, Boswell indicated in his discovery responses that he was still seeking $82,140 in contract damages, using the calculation set forth in his complaint.

By the time of trial in 2014, Boswell sought only $70,744 in contract damages. He conceded that he had earned some money during the remainder of the contract term that mitigated his damages. He introduced records indicating that he had performed a few shows for other ven-

ues and earned money from the sale of merchandise. Based on these records, the trial court found that Boswell earned $1,741 from performances and merchandise sales and deducted that amount from the amount owed by the Theater. At trial, Boswell also admitted that prior to the cancellation of the show, the Theater had not been subtracting the $715 daily deduction for the dates he missed for previously scheduled bookings. Instead, he had been paid $5,000 per week without the deductions. Therefore, he admitted that the Theater was also entitled to deduct those sums from the amount he was owed. The trial court calculated the appropriate sum at $15,015 for twenty-one days of performances and deducted that sum from the damages owed to Boswell. The trial court awarded Boswell $70,744, which was the amount he requested at trial. However, considering the discrepancy between the amount sought in Boswell's complaint and the amount eventually awarded at trial, and the dispute over the two deductions or offsets for at least the first years of the proceedings, we conclude that a reasonable controversy existed, under Nebraska law, with regard to the amount Boswell was entitled to recover.

On appeal, Boswell argues that an asserted right to an offset does not render an amount unliquidated under Nebraska law, citing *Wiebe Constr. Co. v. Sch. Dist. of Millard, in Douglas Cnty.*, 198 Neb. 730, 255 N.W.2d 413, 417 (1977). We agree that this is an accurate statement of Nebraska law, but it does not aid Boswell in this case. In *Wiebe*, the Nebraska Supreme Court held that "in an action for a liquidated sum which represents a balance owing on a contract, the amount claimed does not become an unliquidated claim merely because of the *assertion* of an offset, and that if the trier of fact finds *against* the defendant on the offset, prejudgment interest should be awarded on

the plaintiff's claim." (Emphasis added.) Here, the offsets were not unsuccessfully asserted; they were deemed legitimate and deducted from the damages awarded to the plaintiff, rendering the amount awarded significantly less than the amount sought in the complaint.

The *Wiebe* court noted that in some other jurisdictions, courts have "gone a bit further" and awarded prejudgment interest on a contract balance after deducting legitimate offsets. *Id.* However, the Nebraska court declined to adopt that position, stating, "Whether we wish to go that far can be decided when a pertinent case reaches us." *Id.* The court resolved that issue in two subsequent cases and held that a successfully asserted offset renders a claim unliquidated. *See Gottsch Feeding Corp. v. Red Cloud Cattle Co.*, 229 Neb. 746, 429 N.W.2d 328, 334 (1988) (affirming denial of prejudgment interest due to an offset; "While it is true that the agister proved a right to recover for the services it provided under the terms of the contract, the setoff the owner proved renders the agister's claim unliquidated."); *Langel Chevrolet–Cadillac, Inc. v. Midwest Bridge & Constr. Co.*, 213 Neb. 283, 329 N.W.2d 97, 102 (1983) (reversing award of prejudgment interest because the amount awarded under the contract was subject to an offset). The Nebraska Supreme Court Committee on Practice and Procedure summarizes Nebraska law on the issue as follows:

"[I]n an action for a liquidated sum ..., the amount claimed does not become an unliquidated claim merely because of the assertion of an offset, and ... if the trier of fact finds against the defendant on the offset, prejudgment interest should be awarded on the plaintiff's claim." *Wiebe Constr. Co. v. School Dist.*, 198 Neb. 730, 737–38, 255 N.W.2d 413, 417 (1977). On the other hand, if the setoff succeeds, then the

claim subject to the offset is unliquidated. *Gottsch Feeding Corp. v. Red Cloud Cattle Co.*, 229 Neb. 746, 754, 429 N.W.2d 328, 334 (1988), *citing Langel Chevrolet–Cadillac*, 213 Neb. at 289–90, 329 N.W.2d at 102.

1 *Neb. Prac. Series*, Nebraska Jury Instructions—Civil 2d, Ch. 4(A)(7) (2015).

█ The trial court did not analyze whether a reasonable controversy existed with regard to the Theater's liability or the amount of Boswell's recovery; it simply awarded prejudgment interest without explanation. "An award of prejudgment interest is within the sound discretion of the trial court[.]" *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn.1998) (citing *Spencer v. A–1 Crane Serv., Inc.*, 880 S.W.2d 938, 944 (Tenn.1994); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn.1992)). However, discretionary decisions must take into account the applicable law and the relevant facts. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). We conclude that a reasonable controversy existed with regard to the amount owed by the Theater, as demonstrated by the amount sought in Boswell's complaint and the two offsets or deductions calculated at trial. Consequently, under Nebraska law, Boswell was not entitled to prejudgment interest.

## IV. CONCLUSION

For the aforementioned reasons, the awards of attorney's fees and prejudgment interest are hereby vacated, and the decision of the circuit court is reversed and remanded for further proceedings. Costs of this appeal are taxed to the appellee, Troy Boswell, for which execution may issue if necessary.